503 So.2d 174 (1987)
Donald J. HELLMERS, Jr., et al.
v.
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, State of Louisiana, et al.
No. CA-6049.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1987.
Rehearings Denied March 19, 1987.
Writ Denied May 8, 1987.
*176 Charles A. Verderame, Giraud, Cusimano & Verderame, New Orleans, for appellee/cross appellant Donald J. Hellmers.
Law Offices of James J. Morse, Ronald K. Gurley, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John C. Combe, Jr., New Orleans, for The Travelers Indem. Co.
Norman L. Sisson, Sharon F. Lyles, William J. Doran, Jr., Frank J. Gremillion, Baton Rouge, for The State of La., Dept. of Transp. and Development.
Michael D. Carbo, Adams & Reese, New Orleans, for Liberty Mut.
Before BARRY, KLEES and LOBRANO, JJ.
KLEES, Judge.
This appeal stems from a suit by Donald J. Hellmers, Jr. against the Louisiana Department of Transportation and Development [hereinafter "DOTD"] and its insurer alleging that the negligence of DOTD caused the automobile accident which killed Hellmers' wife and injured their two minor sons. The district court awarded plaintiff $1,022,523.53 in damages against the two defendants in solido.
On April 20, 1983, at approximately 2:30 p.m., Phyllis Hellmers was driving from Slidell to New Orleans in the southbound lane of Louisiana Highway 11 when she was suddenly confronted with a line of stopped cars in her lane of traffic. Attempting to avoid a collision, Mrs. Hellmers swerved into the opposite lane of the two lane highway and was hit by an oncoming car. The accident resulted in the death of Mrs. Hellmers and serious injury to her two-year old twin sons, who were passengers in her vehicle.
The obstruction that Mrs. Hellmers was attempting to avoid was caused by a DOTD truck parked on the southdraw of a bridge and totally blocking the southbound lane of Highway 11. The truck was there for the purpose of allowing DOTD employees to do some maintenance work under the bridge.
Following the accident, plaintiff Hellmers sued DOTD on behalf of himself and his three minor children; he later amended his petition to add as a defendant Travelers Indemnity Company, the insurer of the DOTD truck. Travelers claimed that its policy did not afford coverage because the accident did not result from "the ownership maintenance, or use" of the DOTD truck. DOTD and Travelers denied all liability to plaintiff on the grounds that the sole cause of the accident was the negligence of Mrs. Hellmers. Defendants also named as a third party defendant Liberty Mutual Insurance Company, the insurer of the Hellmers' vehicle, from which they sought indemnity. Liberty Mutual then reconvened against Travelers and DOTD for payments it had made to plaintiff and others under its insurance policy.
The district judge referred the case to a Commissioner pursuant to LSA-R.S. 13:1171. After hearing the testimony, the Commissioner filed a thirteen-page report in which he made the following findings: (1) The proximate cause of the accident was negligence of DOTD in failing to adequately warn drivers of the traffic obstruction ahead, specifically DOTD's failure to implement the traffic control procedures that were required by the DOTD Maintenance and Traffic Control Handbook as absolute minimum safety standards; (2) At the time of the accident, the DOTD truck was "in use" so as to afford coverage under the *177 Travelers policy; (3) Driver error on the part of Mrs. Hellmers was a contributing cause of the accident; (4) The percentage of fault attributable to DOTD was 85% and that attributable to Mrs. Hellmers was 15%. The Commissioner then assessed damages as follows:

Melanie Hellmers (minor child) 
Loss of love, affection and companionship $225,000.00
Brian Hellmers (minor child) 
Loss of love, affection and companionship $225,000.00
Personal injuries  pain and suffering $ 10,000.00
Total $235,000.00
Kevin Hellmers (minor child) 
Loss of love, affection and companionship $225,000.00
Personal injuries  pain and suffering $ 15,000.00
Total $240,000.00
Donald Hellmers 
Loss of love, affection and companionship $325,000.00
Loss of wife's earnings/services $150,000.00
Medical bills (Phyllis Hellmers) $ 24,000.23
Medical bills (Brian Hellmers) $ 8,878.40
Medical bills (Kevin Hellmers) $ 9,572.85
Funeral bills $ 3,164.43
Total $520,615.91
Total Damages $1,220,615.91

The Commissioner then reduced this figure by 15% to account for the negligence of Phyllis Hellmers and subtracted $15,000.00, which amount had already been paid plaintiff by his insurer, Liberty Mutual, making the final award to plaintiff the sum of $1,022,523.53. In addition, the Commissioner found in favor of Liberty Mutual on its reconventional demand against DOTD and Travelers, awarding Liberty Mutual the sum of $54,304.12, which figure represented 85% of the amounts it had paid to plaintiff and to the owner and occupants of the other vehicle involved in the collision.
The parties filed exceptions to the Commissioner's report in the district court. After hearing arguments on the exceptions, the court took the matter under advisement. On March 21, 1986, the district court rendered a judgment confirming the Commissioner's decision. The court's judgment was later amended as to form only. From this judgment, all parties have appealed.
In reviewing the record on appeal, we must apply the "manifest error" standard  that is, we must give great weight to the factual conclusions of the trier of fact and accept reasonable evaluations of credibility and reasonable inferences of fact made by him; we are not free to substitute our own evaluations and inferences even though they might be as reasonable. Canter v. Koehring Co., 283 So.2d 716 (La.1973). Applying this standard, we can find no manifest error in the district court's judgment in favor of plaintiff. However, we do find that the judge erred with regard to the award to Liberty Mutual, and will therefore modify that award.
As the issues in this case are diverse, we will discuss each in turn.

I. The Apportionment of Fault
The court's finding that DOTD was 85% at fault and Mrs. Hellmers was 15% at fault is clearly reasonable in light of the evidence. As the Commissioner stated in his report, the actions of the DOTD employees represented much more than a mere slight deviation from proper traffic control procedures; rather, they exhibited a total failure to follow even the minimum *178 safety standards required by DOTD's own manual. Both plaintiff's and defendants' experts agreed that the appropriate signing and warning requirements for the situation presented were set forth on page 19 of the DOTD Maintenance and Traffic Control Handbook. This handbook required that warning signs be placed at 1600 feet, 1100 feet, and 600 feet in advance of the obstruction. Despite this fact, no warning signs were used, and the DOTD employees who performed the work testified that they didn't even carry such signs in their truck. Neither of the two employees had ever received any training in directing or controlling traffic, flagging traffic, or safely blocking lanes of traffic. Moreover, the supervisor of these two employees, who was responsible for training them, had never received any training himself and had never even seen a copy of the Traffic Control Handbook. The only warning given to motorists was the placement of cones by the two employees in a manner that was not necessarily consistent with the pattern shown in the handbook. The DOTD employees testified that the light on top of their truck was turned on as a warning signal, but none of the witnesses to the accident could remember the light being on. Whereas the handbook requires two flagmen, the employees testified that one of them was working under the bridge while the other remained on top and acted as a flagman. The flagman, who was attempting to control traffic from both directions, stated that he did not attempt to flag Mrs. Hellmers' vehicle and in fact, did not even know a collision had occurred until another motorist told him.
In view of this evidence, we find that DOTD's high duty to warn motorists of the risk which DOTD itself had created, as well as the extreme deviation of the DOTD employees from the required standard of care, justifies the assignment of 85% of the fault to DOTD. If any of the appropriate safety measures, such as signs, proper flagging procedure, or proper placement of cones, had been implemented, this accident might have been avoided. See Forest v. State, the Louisiana Dept. of Trans. & Development 493 So.2d 563 (La. 1986).
We further find that the assignment of 15% fault to Mrs. Hellmers is reasonable. Plaintiff argues that comparative negligence should not apply to this case because DOTD's duty of care included the obligation to protect motorists even from their own carelessness. We disagree. Although DOTD had a high duty of care, it was not so high that Mrs. Hellmers' own negligence should be completely ignored. The court assigned 15% fault to Mrs. Hellmers because, despite the gross failure of DOTD to properly warn motorists, other drivers were able to stop their vehicles safely. Defendants argue that 15% does not adequately account for Mrs. Hellmers' inattentiveness and reckless driving. We disagree. There was no evidence that Mrs. Hellmers was speeding. Moreover, the evidence shows that she did not have the benefit of a flagman, which the drivers of the stopped vehicles might have had. Under the circumstances, we find the apportionment of fault to be appropriate.
Finally, plaintiff argues that if the award is to be reduced by 15%, the reduction should not apply to the amount ($25,000) representing the pain and suffering of his two minor sons because these damages are not derivative of the wrongful death of his wife. This argument is without merit. Under the comparative negligence law, if defendants are only 85% at fault, they can be required to pay no more than 85% of the damages of any injured person, even a guest passenger. The remaining 15% of fault is attributable to Mrs. Hellmers. If plaintiff had sued Liberty Mutual, his own insurer, on behalf of his children, he could have recovered from it the remainder of the damages suffered by his sons. As plaintiff chose not to do this, he cannot recover this amount.

II. Coverage under the Travelers' Policy
Travelers urges, as it did in the court below, that there is no coverage under its policy for this incident because the DOTD truck was not "in use" at the time of the accident. The most recent Supreme Court *179 decision interpreting the policy language in question here is Carter v. City Parish Government of East Baton Rouge, 423 So.2d 1080 (La.1982). In that case, the Court stated:
The arising-out-of use provision is designed to limit coverage to liability resulting from conduct of the insured which constitutes both a use of the vehicle and a legal cause of the injury. Accordingly, we believe that the limitation requires a court to answer two separate questions: (1) was the conduct of the insured of which the plaintiff complains a legal cause of the injury? (2) was it a use of the automobile?
Carter, supra at 1087. In Carter, the Court went on to conclude that the drowning of defendant's ten-year old passenger arose out of the use of defendant's vehicle, which he had negligently driven into a body of water.
In the instant case, the conduct of which plaintiff complains is DOTD's obstruction of the path of Mrs. Hellmers' vehicle and its negligent failure to warn of such obstruction. There is no question that this conduct was a legal cause of the accident, thus satisfying the Supreme court's first inquiry. Travelers claims, however, that such conduct did not constitute a use of the vehicle (the DOTD truck). We disagree. The truck was being used both to block the highway and as a part of the warning system, however inadequate, implemented by the DOTD employees. The employees testified that the truck's engine and light were left on and that they kept various tools they might need in the truck. Several DOTD officials testified that it was normal for the truck to be used in this manner. Therefore, we find that the DOTD truck was "in use" at the time of the accident so as to afford coverage under the Travelers policy.

III. Quantum
Defendants contend that the amount of general damages awarded plaintiff was excessive and cite numerous cases to support this contention. Plaintiff also cites cases in support of his claim that the award was justified. In reviewing this issue, we are mindful of the Supreme Court's admonition that before we can consider prior awards, we must first look at the individual circumstances of this case and determine that the trier of fact abused its "much discretion" in awarding damages. Reck v. Stevens, 373 So.2d 498 (La.1979). Considering the evidence, we find no such abuse of discretion in this case. The $25,000 assessed for the pain and suffering of plaintiff's twin sons is reasonable considering that they had surgery, spent nearly two weeks in the hospital, had residual abdominal pain for six to eight months, and one twin had a permanent scar on his forehead. The amounts awarded plaintiff and his children for the loss of his wife, although high, are not beyond the court's discretion. Mrs. Hellmers was thirty years old at the time of her death. Unquestionably, the Hellmers had a good marriage and Mrs. Hellmers was a devoted mother to her three young children. She also had many other talents and hobbies, such as painting, sculpture, pottery-making and gardening. Just prior to her death, she had reapplied for the position at the Louisiana Office of Employment Security which she had held before the birth of the twins. The Hellmers were also planning to build a new home, for which they had purchased a lot and had initial blueprints drawn. In view of these facts, we do not believe that the court's award of general damages was an abuse of discretion, and therefore we will not disturb that award.

IV. Interest Award
The judgment appealed from awards "All amounts together with judicial interest from the date of judicial demand until paid and all costs of these proceedings." Travelers first complains that the date of judicial demand should be February 13, 1984, the date that plaintiff added Travelers as a defendant, rather than June 3, 1983, the date that plaintiff filed his petition against DOTD. This argument has no merit. Because Travelers and its insured DOTD are solidarily liable, the date of judicial demand for purposes of calculating the interest award is the date DOTD was sued. *180 See La.Rev.Stat.Ann. 13:4203; Probst v. Wroten, 433 So.2d 734 (La.App.5th Cir. 1982).
Travelers also challenges the court's award of interest on the entire amount of the judgment, claiming that Travelers should not be liable for interest on any amount beyond its $1,000,000 policy limits. There is no basis for this complaint. The judgment correctly assesses interest on the entire award against both defendants in solido. It is not the function of the trial court to apportion the award between solidary defendants. If for some reason DOTD does not pay its share and Travelers is forced to pay plaintiff more than its policy dictates, Travelers would presumably have recourse against DOTD for the excess.

V. Limitation of Liability
In this respect, defendants argue that R.S. 13:5106, which limits general damages against the state of Louisiana to $500,000, applies in this case. We do not believe that this statute, which became effective on September 6, 1985, after the Commissioner rendered his decision and more than two years after the accident occurred, should be applied retroactively in this case. Moreover, as a practical matter, assuming Travelers will pay the judgment up to its policy limits, DOTD's actual responsibility will not exceed the limit set out by the statute.

VI. Third Party Claim
Defendants complain that the judgment failed to award them indemnity on their third-party claim against Liberty Mutual for the personal injuries suffered by the two children who were passengers in the Hellmers vehicle. Because Mrs. Hellmers was 15% at fault, defendants argue that the trial judge should have awarded them 15% of these damages (which amounted to $25,000.00 in pain and suffering and $18,451.25 in medical expenses) from Liberty Mutual. This argument is based on faulty reasoning. The entire judgment has already been reduced by 15% to reflect the negligence of Mrs. Hellmers, Liberty Mutual's insured. The reduction of an additional 15% would therefore constitute a windfall to defendants. The district court was correct in denying the third-party claim.

VII. Award to Liberty Mutual
Finally, defendants claim that the lower court erred by casting them in judgment for 85% of the sums that Liberty Mutual had paid to plaintiff and others as a result of the accident. This award was based on Liberty Mutual's reconventional demand claiming indemnity or contribution for the following amounts: (1) Payments made to plaintiff Hellmers under the property damage, medical pay, and accidental death provisions of plaintiff's policy; (2) Payments made to Mr. Maus, the owner of the vehicle that collided with Mrs. Hellmers, for property damage under the liability provisions of the Hellmers' policy; and (3) Payments made to the occupants of the Maus vehicle in personal injury settlements negotiated by Liberty Mutual. Defendants contend that no contribution is owed Liberty Mutual because Liberty Mutual was neither conventionally nor legally subrogated to the claims of the payees.
We agree that Liberty Mutual was not conventionally subrogated to these claims, as its policy contained no subrogation agreements and there was no allegation or proof that the requirements for conventional subrogation had been met. See La.Civ.Code arts. 1827, 1828 (formerly art. 2160). With regard to legal subrogation, Civil Code article 1829 (formerly article 2161) states that subrogation takes place by operation of law:
(3) In favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment.
Prior cases have held that in order to come under this provision, the obligor must be solidarily liable with those on whose behalf he has paid the debt. See Lagrue v. Murrhee, 291 So.2d 844 (La.App.4th Cir.1974), writ denied, 294 So.2d 829 (La.1974); Courtney v. Harris, 355 So.2d 1039 (La. App.4th Cir.1978). Recently, however, the *181 Supreme Court in Aetna Ins. Co. v. Naguin, 488 So.2d 950 (La.1986), decided that legal subrogation under article 2161(3) (the predecessor of article 1829(3)) does not require solidarity. Id. at 954. In that case, the Court held that Aetna, who had made payments to tenants under the property damage provisions of the landlord's homeowner's policy, could recover the amounts paid from the contractor who was responsible for the damage, even though the landlord did not join in Aetna's suit. In holding that Aetna was legally subrogated, the Court stated:
Support for the proposition that Aetna is bound with Naquin [the contractor] can also be found in the 1984 revision of the Civil Code.... In the official comments to NA [sic] LSA-C.C. art. 1829(3), comment (d) states that, "An obligor is bound `with' another under this article regardless of whether his obligation arises from the same act as the obligation of the other or from a different act." In this case Aetna was bound with Naquin for the damages to the tenants. Aetna was bound for a different reason than Naquin but they were bound for the same thing. It is unnecessary to examine the relationship of the parties for solidarity as we have concluded that LSA-C.C. art. 2161(3) does not require solidarity.
Id. at 954 (footnotes omitted).
Following the interpretation of the Code article in Naquin, we find that Liberty Mutual was legally subrogated to the claims of its insured for payments it made under its policy; therefore, it can recover the amounts paid to plaintiff. However, we deny recovery of the amounts that Liberty Mutual paid to other parties as a result of the accident. We know of no theory which would allow legal subrogation in this instance. Unlike the situation in Naquin, these were not amounts paid by an insurer on behalf of its insured who was not responsible for the damages. Rather, they were sums which Liberty Mutual elected to pay to the owner and occupants of the Maus vehicle before any determination of liability was made. Since these persons were not a part of the litigation, there has not been any determination of the liability of either DOTD, Travelers, or Liberty Mutual with regard to them. Therefore, in making these payments, Liberty Mutual did not "pay a debt [it] owed with others or for others" in terms of article 1829(3). In the absence of legal subrogation, Liberty Mutual is not entitled to reimbursement for these amounts.
Accordingly, the award to Liberty Mutual is reduced from $54,304.12 to $15,597.50, which represents 85% of $18,350.00, the total amount Liberty Mutual paid to plaintiff under its policy. We further amend the judgment to award said amount ($15,597.50) in favor of Liberty Mutual and against the State of Louisiana, Department of Transportation and Development, and Travelers Indemnity Company in solido, thereby correcting a technical error made by the district judge in failing to cast Travelers in judgment to Liberty Mutual.
Accordingly, the judgment of the district court in favor of plaintiff Hellmers is affirmed, and the judgment in favor of Liberty Mutual, the plaintiff in reconvention, is modified to the extent we have stated and so modified, is affirmed.
MODIFIED AND AFFIRMED.