550 So.2d 1356 (1989)
Mary B. COMBERREL, Individually and as Natural Tutrix of Her Minor Children, Janell Ann Comberrel and Carrie Lee Comberrel
v.
Betty Basford, wife of/and Michael BASFORD, et al.
No. 89-CA-234.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1989.
Rehearing Denied November 17, 1989.
*1358 John G. Gomila, Jr. New Orleans and H. Alston Johnson, III, Baton Rouge, for defendants-appellants.
Daniel A. Ranson, Gretna, for plaintiff-appellee-appellant.
Steven M. Little Virgil A. Lacy, III, Metairie, Andrew L. Plauche, Jr., and Eugene G. Taggart, New Orleans, for defendants-appellees-appellants.
David L. Bordelon and Burt K. Carnahan, Metairie, for defendants-appellees.
Before CHEHARDY, DUFRESNE, and WICKER, JJ.
WICKER, Judge.
Mary B. Comberrel and several insurance company defendants appeal a judgment in favor of Comberrel and her minor children and against the insurance companies. The issues are the respective ranking of insurance coverage, the amount of damages, and the appropriateness of penalties and attorney's fees. We affirm.
Floyd J. Comberrel, Jr. was driving an automobile leased by his employer, Louisiana Power & Light Company (LP & L), on October 31, 1983. He was struck and killed by Betty Basford, driving an automobile owned by her and her husband, Michael Basford. The Basfords had no insurance and have since filed for bankruptcy. Comberrel's widow, Mary, sued for damages on behalf of herself and the minor children, Janell Ann, age 6, and Carrie Lee, age 1½. In her original petition Comberrel sued the Basfords; Maryland Casualty Insurance Company, as insurer of LP & L; and State Farm Mutual Automobile Insurance Company, her own uninsured/underinsured motorist carrier (UM).
LP & L intervened for reimbursement of funeral and medical expenses and worker's compensation paid to Mary Comberrel and for damage to the automobile.
Comberrel filed her first supplemental and amending petition, adding as defendants Sunset Insurance Company and Mission National Insurance Company, additional providers of UM coverage. By second supplemental and amending petition, Comberrel added Underwriters at Lloyds, also known as the Pryke Group (thirty-odd insurers); International Insurance Company; First State Insurance Co.; and Fireman's Fund, all alleged to be providers of UM coverage.
International and Pryke third-partied the Basfords. Comberrel filed a third supplemental and amending petition which increased the demand for damages but added *1359 no new defendants. She also reiterated her demand for penalties and attorney's fees.
Maryland and Highlands filed motions for summary judgment, both of which were denied. That of First State Insurance Company was apparently never acted upon. Various exceptions of no right of action, no cause of action, prescription, and lack of procedural capacity were filed; but most of these were not addressed or resolved until after the trial. Highlands and Pryke moved the court in limine to rank the various UM coverages. Mission moved for and was granted a stay based upon the allegation that it was in liquidation in California. Other motions in limine to disallow certain testimony or to exclude witnesses other than those outlined in answers to interrogatories were also filed.
The judge tried the coverage issue on September 14, 1987, almost four years after the accident which killed Floyd Comberrel. He rendered judgment ranking coverages on October 19, 1987. He rendered a second, amending judgment one month later, following motions for a new trial and/or clarification filed by Pryke, Sunset, and Maryland.
Pryke filed a third party demand against Maryland and Sunset, and Maryland responded with third party demands against Sunset and Pryke. Maryland was then voluntarily dismissed by Comberrel, having settled for its policy limits of $250,000.00. Maryland remained in the suit, however, by virtue of its third-party action against Sunset and Pryke. State Farm was also dismissed from the suit on its own motion.
Following a three-day trial on the merits, the trial judge rendered a third judgment in favor of Comberrel and the children in the amount of $1,237,316.00 plus interest against the Basfords, Sunset, International, and Pryke in solido. That judgment also awarded to Comberrel and against LP & L, the intervenor, sixteen percent of her attorney's fees and expenses plus interest, representing LP & L's proportionate share of Comberrel's cost of recovery. It awarded to LP & L $56,172.00 for its payments of past worker's compensation benefits and funeral expenses and $146,505.20 for future benefits.
The judge reasoned that Basford was clearly at fault and that her fault was the sole cause of the accident. He also noted that, as of the time of trial, the only remaining insurance company defendants were Sunset, International, and Pryke. He broke the award down as follows:

Loss of support $537,316.00
Wrongful death $650,000.00
Survival action $ 50,000.00

The judge stated that both Comberrel and the insurers presented expert testimony on economic loss and that the experts differed in their conclusions. He accepted for the most part the conclusions of Comberrel's expert in making an award of $36,316.00 for loss of employment benefits; an annual rate of increase of 7.06%; a discount rate of 8.75%; a work life expectancy of 34 years (Floyd Comberrel was 31 years old when he died); and a personal rate of consumption of 23%. The judge found uncontradicted evidence of the affection between Floyd Comberrel and his wife and daughters, and he noted that Floyd Comberrel's injuries were agonizingly painful and that he was aware of their fatal nature prior to his death.
This judgment was met by more motions for a new trial by International, Sunset, Pryke, and Comberrel, asking again for clarification of the ranking issue, for a determination of LP & L's obligation to Comberrel, for a setting of expert fees and court costs, for deletion of the Basfords as obligors by virtue of their having filed for bankruptcy, and for other relief. Maryland also complained of the apparent denial of its third-party demand against Sunset, International and Pryke.
The judge rendered his fourth judgment on October 3, 1988, ranking policies in the following order: (1) Sunset Policy #CAGL-003; (2) Maryland Policy # CA 34213737; (3) Insurisk Certificate # 797, (4) Insurisk Certificate # 798, (5) Insurisk Certificate *1360 # 232 [the Insurik certificates are in the Pryke group] and (6) International Policy # 522 0276489, "with liability to be apportioned on a pro-rata basis." This judgment recognized the Basford bankruptcy; set LP & L's proportionate share of attorney's fees and costs at $66,370.00; specified expert witness fees; granted a credit to LP & L against its portion of attorney's fees and costs equal to its entitlement to reimbursement for past worker's compensation benefits and funeral expenses according to a consent judgment between LP & L and Comberrel; and ordered a credit in favor of LP & L for future benefits out of the judgment proceeds according to that same consent judgment.
The judgment denied Comberrel's other requested relief, including her request for attorney's fees and penalties under La.R.S. 22:658. It denied the motions for new trial of Pryke and Sunset, denied Maryland's third-party demands and various exceptions to those demands, and denied Pryke's third-party demands against Sunset and Maryland.
The judge concluded that all the policies in question were statutory primary under La.R.S. 22:1406D(1)(c). As among these primaries, he found that Sunset and Maryland provided underlying coverage and that Pryke's and International's policies were contractually excess. Since the contractually primary policies had sufficient limits to cover the judgment, the judge concluded that the Pryke and International policies would not be reached absent some circumstances resulting in unavailability of the primary coverage. He found that Comberrel had not offered proof that any of the defendants were arbitrary and capricious since there were serious issues relating to coverage up to the date of the trial, and he denied her claim for penalties and attorney's fees. The reason for the judge's denial of Maryland's third-party demand was his belief that there had not ever been a waiver of UM coverage under Maryland's policy.
Sunset suspensively appealed the judgments of October 19, 1987; February 29, 1988; and October 3, 1988. International asked for an injunction to prevent Comberrel from executing on the judgments and then devolutively appealed the October 3, 1988, judgment. Maryland appealed devolutively the October 19, 1987; February 29, 1988; and October 3, 1988, judgments. Pryke devolutively appealed the same three judgments. Comberrel appealed devolutively the judgments of October 19, 1987; November 19, 1987; February 29, 1988; and October 3, 1988. Since the appeals were filed, the claims of Comberrel and LP & L against each other have been partially satisfied.
On March 21, 1989, the judge ruled that Comberrel could not proceed against either Pryke or International as excess insurers until the primary coverage was exhausted. We granted Comberrel's writ application and remanded "with instructions to the trial judge to allow the plaintiffs to proceed against International and Pryke until these defendants convert their devolutive appeals to suspensive appeals." The Supreme Court reversed us and reinstated the trial court's ruling.
Sunset assigns as error that (1) the judge found its policy covered Commonwealth Plan, Inc. [the owner/lessor of the car Floyd Comberrel was driving]; (2) he found the existence of UM coverage under its policy; (3) he failed to assess a pro rata share of the judgment to International and Pryke; and (4) he awarded excessive damages to Comberrel.
Comberrel assigns as error that (1) the trial judge failed to award penalties and attorney's fees pursuant to La.R.S. 22:658, (2) he found Sunset had made a "tender", (3) he failed to allow her to execute on the judgment pending the appeal, (4) he erred in calculating loss of support, (5) he created an ambiguity with regard to payment of costs, and (6) he dismissed State Farm.
Pryke assigns no errors but responds that (1) Sunset may not for the first time on appeal raise the issue of non-coverage or seek to avoid the effect of its stipulation, (2) Sunset's policy provided $100,000 limits *1361 for both liability and UM, (3) the judge correctly held that Sunset's policy limits must be exhausted prior to any recovery from the excess insurer, and (4) he correctly denied Comberrel penalties and attorney's fees.
International assigns no errors but argues that the Supreme Court's grant of writs is tantamount to a holding that the judge's rulings on ranking of insurance were correct. It also argues that (1) Sunset cannot unilaterally revoke its stipulation, (2) a liability insurer must provide UM coverage in an amount equal to liability coverage absent rejection, and (3) an excess insurer can be held liable only if and when the damage award exceeds primary coverage.
Maryland assigns as error that (1) the trial judge found LP & L had not effectively waived UM coverage and (2) he dismissed its third-party demands against Sunset and International.
DAMAGES
Sunset complains of the trial court's decisions on work life expectancy and future wage increases. It also complains that the award exceeded comparable awards in other cases. Comberrel also appeals the damage award, arguing that the trial judge made a mathematical miscalculation in figuring loss of support. Neither contests the facts of Floyd Comberrel's injuries, death, earnings, or family relationships; but they disagree on the conclusions to be drawn from these facts. The other parties to this appeal take no position on this issue.
The fatal accident happened about 6:10 P.M., and Comberrel was pronounced dead at 7:12 P.M. During that period he was trapped with his broken legs pinned under the seat. In addition to his leg injuries, he had a puncture wound in his chest, broken ribs, and severe facial and dental trauma. At one point, the rescue workers deemed his situation so critical they considered ripping off his leg to get him out of the car. He was conscious and aware of his predicament, and medical necessity dictated that he not be given pain medications. Blood in his lungs and mouth as well as the fractures of his jaw and face made it very difficult to administer oxygen.
The judge awarded $50,000.00 to Floyd Comberrel's survivors for the physical pain and mental anguish he suffered during a period of a little more than an hour. Pain and suffering damages are necessarily subjective and impossible to measure precisely, and the trial judge is allowed a great deal of discretion in assessing them. La.C.C. art. 1999; Reck v. Stevens, 373 So.2d 498 (La.1979). We do not believe that under the circumstances of this case the judge abused his discretion in fixing survival damages at $50,000.00. The Third Circuit has previously upheld an award of $25,000.00 for pain and suffering, even though the decedent may have remained conscious and suffering for as little as five to thirty minutes. Johnson v. Georgia Cas. & Sur. Co., 488 So.2d 1306 (La.App.1986), writ den. 493 So.2d 1223 (La.1986).
Floyd and Mary Comberrel had been high school sweethearts and had been married for about ten years prior to Floyd's death. They had two little girls. All the evidence establishes that Floyd was an exemplary husband and father, unusually close to his children, and that his life revolved around his family and his civic activities. Mary testified that Floyd helped with homework, managed the family budget, paid the bills and wrote almost all of the checks, did the household maintenance, cut the grass, and helped with the grocery shopping and cooking. They had planned to have more children and were looking for a larger house at the time of Floyd's death. Her testimony concerning the emotional effect Floyd's death had on her and her older daughter was heartrending.
The judge awarded a total of $650,000.00 in wrongful death damages for the grief and loss suffered by Comberrel and the two children. La.C.C. art. 2315. He apportioned the award to give Comberrel *1362 $300,000.00; Janell $200,000.00; and Carrie $150,000.00. As in awards for survival actions, attempts to measure in money such intangibles as grief, loss of love and affection, and loss of companionship are subjective and discretionary. La.C.C. art. 1999. The uncontradicted evidence of a strong, loving family amply supports the judge's decision. Furthermore, such awards are not out of line with others. In Hellmers v. Dept. of Transp. & Development, 503 So.2d 174 (La.App. 4th Cir.1987), writ den. 505 So.2d 1141, 1149 (La.1987), the court upheld an award of $325,000.00 to a husband for the loss of his wife's love, affection, and companionship; an additional $150,000.00 to the husband for the loss of his wife's services and/or earnings; and $225,000.00 to each of three minor children.
Both Comberrel and the insurance companies presented the testimony of economic experts on the issue of loss of economic support; and, not surprisingly, they differed in their conclusions. The parties also presented medical evidence regarding a brain stem tumor, found in Floyd Comberrel on autopsy, relative to his work life expectancy. Comberrel's two experts did not believe the tumor would shorten Floyd Comberrel's life or work life expectancy, while the defense expert believed it unlikely he would have been able to work until age sixty-five.
The judge awarded loss of support in the amount of $537,316.00. In reaching this conclusion he noted, "All testimony and evidence presented to this Court gives an uncontradicted picture of a bright, energetic and highly motivated young man who had progressed in his job at two times the national average." With regard to the brain tumor, the judge believed the "brain tumor had a very minimal potential for growth and was highly unlikely to become malignant" and concluded it would not have shortened Floyd Comberrel's work life expectancy. The trier of fact must weigh expert testimony in the same manner as he weighs other evidence. He is not bound by expert testimony but may use his own common sense and judgment where appropriate. Williams v. Anderson, 456 So.2d 666 (La.App. 5th Cir.1984), writ den. 459 So.2d 541 (La.1984). We believe his conclusions to be reasonable ones which are supported by the evidence.
Where a judge's conclusions are supported by credible evidence which furnishes a reasonable factual basis for his findings, we will not disturb these findings absent manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973). We find no such manifest error in the damage award and affirm it in all respects.
SUNSET'S COVERAGE
Sunset's policy afforded coverage to Bankers Leasing Corporation, which owned one hundred percent of the stock of Commonwealth. Only Bankers was listed as an insured on the Sunset policy. Commonwealth owned and leased to LP & L the car Floyd Comberrel was driving.
As a result of Comberrel's discovery efforts, Sunset agreed to stipulate to its policy and coverage. The stipulation between Comberrel and Sunset recited that (1) Commonwealth was a named insured on the policy; (2) the policy was in force on the date of the accident; (3) the policy provided UM coverage, no rejection or selection of lower limits having been executed; and (4) the policy limits were $1,000,000.00.
Sunset now claims that this stipulation is in conflict with the actual policy and that it should not be bound by its stipulation. It argues that only the policy can define its rights and obligations, the policy is the law between the parties, and its counsel only inadvertently entered into the stipulation on the eve of the trial on ranking. It introduced testimony during trial in support of its claims of non-coverage. Comberrel, on the other hand, points out that both Sunset and Commonwealth were represented by the same attorney and the entry into the stipulation was not inadvertent but "was carefully thought out." She further argues that it is not the policy but the stipulation which has the force of law *1363 between the parties. International argues that the stipulation was neither inadvertent nor erroneous and that Sunset should be held to it. Pryke claims that Sunset is raising this issue for the first time on appeal, contrary to principles of appellate review.
Sunset also argues that, even if Commonwealth is an insured under its policy, there is no liability insurance on the car in question to which UM coverage could be tied. Comberrel, International, and Pryke argue that the policy and the stipulation, read together, clearly provided for both liability and UM coverages.
La.C.C. art. 2291, now art. 1853, provides:
The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
It amounts to full proof against him who has made it.
It cannot be revoked on a pretense of an error in law.
The Louisiana Supreme Court has held that stipulations have the effect of judicial confessions. They become the law of the case and are binding on the trial court "when not in derogation of law." R.J. D'Hemecourt Petroleum v. McNamara, 444 So.2d 600, 601 (La.1983), cert. den. 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 39 (1984).
We hold that Sunset and Comberrel validly entered into a stipulation regarding the nature and extent of coverage on the vehicle Floyd Comberrel was driving at the time of his death and that the stipulation has the effect of law between them. Sanders' Camper Vil. v. Coleman Oldsmobile, 418 So.2d 679 (La.App. 1st Cir.1982), writ den. 422 So.2d 163 (La.1982). The First Circuit, in Davidge v. H & H Const. Co., 432 So.2d 393, 395 (La.App.1983), considered the effect of a statement of fact entered into evidence as a joint exhibit. "Plaintiffs could have objected to the admission of the agreement but, in fact, joined in the exhibit. We find its introduction amounted to an agreed statement of facts...." The Fourth Circuit noted the difference between agreements affecting the powers, duties, and prerogatives of the court, which will not be upheld, and agreements between the parties affecting their own rights and duties, which will be upheld, citing Wickliffe v. Cooper & Sperrier, 161 La. 417, 108 So. 791 (La.1926). General Inv., Inc. v. Thomas, 400 So.2d 1081 (La.App.1981). [Another, later ruling in this case was reversed, 422 So.2d 1279 (La.App. 5th Cir.1982).] More directly on point, the Fourth Circuit considered the effect of a stipulation between the parties regarding insurance coverage. "Although written stipulations cannot affect the powers, duties and prerogatives of the court, stipulations become the law of the case and must be enforced." Lockett v. Home Ins. Co., 413 So.2d 230, 233 (La.App.1982).
Thornton v. Moran, 341 So.2d 1136 (La. App. 1st Cir.1977), rev'd and remanded 343 So.2d 1065, 1066 (La.1977), on reh. 348 So.2d 79, rev'd in part and aff'd in part, is not applicable. That case involved a stipulation of law and not of fact.
Furthermore, a careful reading of this policy produces the same result with regard to UM coverage. Sunset's policy provides liability coverage in the amount of $1,000,000.00; however, the space marked "covered autos" is blank. It provides $30,000.00 in UM coverage on "any auto." Nothing in this policy excludes coverage on this accident, and anyone is an insured under the policy who is using a covered automobile that is owned by the named insured. The policy limits liability for any one accident to the liability insurance limit shown in the declarations, i.e. $1,000,000.00.
Reading all provisions of the policy together and construing any ambiguities against Sunset, it appears that the policy provides UM coverage on "any vehicle", including the ones leased to LP & L, in the amount of $30,000.00. However, La.R.S. 22:1406 D(1)(a)(i) requires an insurer to provide *1364 UM coverage in an amount equal to its liability coverage absent a waiver by the insured. There is no such waiver, so the UM limits of the policy in question must be raised to $1,000,000.00.
We also reject Sunset's argument that there must be proof of underlying liability coverage in order for there to be UM coverage. In Baesler v. State Farm Mut. Auto. Ins. Co., 481 So.2d 131 (La. 1986), it is clear that the Supreme Court found the existence of UM coverage without any underlying liability coverage. The case cited by Sunset, Jordan v. Honea, 407 So.2d 503 (La.App. 1st Cir.1982), writ den. 409 So.2d 654 (1982), involved a self-insured defendant and turned upon whether or not a self-insurance certificate could be considered as having been "issued or delivered" in Louisiana. That case does not stand for the proposition that UM coverage cannot exist absent liability coverage under an insurance policy.
"The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge...." Roger v. Estate of Moulton, 513 So.2d 1126, 1932 (La.1987). UM coverage is for the protection of the innocent insured "from damage caused by a negligent uninsured motorist whether the injured insured is occupying an automobile listed in the policy, another automobile owned or unowned, or is occupying no automobile." Block v. Reliance Ins. Co., 433 So.2d 1040, 1043 (La.1983). This circuit, in considering whether or not a particular vehicle was covered under a policy, where it was not specifically listed and did not fall precisely into the definition of a replacement vehicle, held that ambiguous provisions which limit liability should be interpreted liberally in favor of coverage. Pomares v. Kansas City Southern Ry. Co., 474 So.2d 976 (La.App.1985), writ den. 477 So.2d 1131 (1985).
PENALTIES AND ATTORNEY'S FEES
Comberrel sought penalties and attorney's fees under La.R.S. 22:658 against the insurance companies. That statute mandates payment of an insured's claim "within 60 days after receipt of satisfactory proofs of loss...." If the failure to make such a payment is "arbitrary, capricious, or without probable cause", a penalty of ten percent, along with reasonable attorney's fees, will be assessed against the insurer. Under the terms of the Sunset policy, Comberrel should be considered an "insured."
In his judgment on the merits of February 29, 1988, the judge failed to address this issue. Comberrel moved for a new trial on this and other issues (as did the insurance companies); and the judge denied the new trial on the penalty and attorney fee issue, reasoning:
In the present case there were serious issues as to coverage up until a few days before trial. When these issues were decided as to Maryland and Sunset, Maryland settled with the plaintiffs and Sunset submitted a tender. Issues concerning coverage as to International and John William Pryke, et al, remained until the date of this Judgment. The plaintiffs have offered no proof that any of the defendants were arbitrary and capricious in their refusal to pay the plaintiffs' claims within 60 days after receipt of those claims.
We agree with the judge that the defendants' refusal to pay Comberrel's claim was neither arbitrary, capricious, nor without just cause. We disagree with his conclusion that Sunset made a tender, since its attorney testified under oath that no unconditional tender was made. This does not change the result, however.
A leading case, cited by the judge in his reasons, is McDill v. Utica Mut. Ins. Co., 475 So.2d 1085 (La.1985). It recognized that "La.R.S. 22:658 is penal in nature and is to be strictly construed. The stipulated sanctions should be imposed only in those instances in which the facts negate probable cause for non-payment." At 1092.
In this case there were serious coverage issues among the various insurers, as is *1365 evidenced by the need for four separate judgments to sort them all out. Where such issues are present, an insurer's failure to pay claims is not arbitrary, unreasonable, or without probable cause. Stewart v. Louisiana Farm Bur. Mut. Ins. Co., 420 So.2d 1217 (La.App. 3rd Cir.1982). The judge's conclusions with regard to penalties and attorney's fees should not be disturbed unless they are manifestly erroneous. Patel v. NN Investors Life Ins. Co., Inc., 498 So.2d 1162 (La.App. 3rd Cir.1986); Cooper v. AMI, Inc., 454 So.2d 156 (La. App. 1st Cir.1984), writ den. 459 So.2d 539 (1984). We do not see manifest error and therefore affirm the judge's denial of penalties and attorney's fees.
DISMISSAL OF STATE FARM
Comberrel appeals the judge's dismissal of State Farm from the suit; the other parties take no position on this issue. State Farm was an excess insurer whose liability would not have arisen until after the first $90,000,000.00 in damages. Since Comberrel's damages do not and will not approach that level, we see no error in the judge's ruling and affirm it.
MARYLAND'S LIABILITY
Maryland is LP & L's liability insurer, with policy limits of $250,000.00. Maryland argued below, and continues to argue on appeal, that LP & L effectively waived UM coverage on the car Floyd Comberrel was driving when he was killed and that Sunset is not liable to Comberrel. Nevertheless, when the judge ruled against it in one of his judgments ranking coverage, Maryland paid its policy limits of $250,000.00 to Comberrel and sought reimbursement from the other insurers through a subrogation agreement with Comberrel.
Maryland urges this court to reverse the trial court judgment denying its third-party demands against Sunset, International and Pryke. Comberrel, Sunset, International and Pryke argue that the judgment finding that LP & L had not effectively waived UM coverage was correct and that, therefore, Maryland is not entitled to reimbursement.
LP & L is one of four operating companies under the control of Middle South Utilities (formerly called Mid South Utilities). Middle South created a separate but subsidiary corporation called Mid South Utilities System Services, Inc. (formerly Middle South Services) for the purpose of handling consolidated services for the operating companies, including insurance.
Employees of the service company, in consultation with LP & L, would contact the insurance broker for placement of coverage; but LP & L would make the ultimate decisions on coverage. The broker would send the bill for coverage to the service company, which would in turn send it to LP & L. LP & L would then pay directly to the insurance company.
In the case of the Maryland policy, an employee of the service company, not of LP & L, signed the waiver of UM coverage. The issue at trial and here is whether or not the service company's employee had the authority to waive UM coverage for LP & L. The judge ruled that
The term "legal representative" in LSA-R.S. 22:1406(O)(1)(A) connotes one who has the authority granted by the insured to act for the insured.... The burden of proving a clear, unambiguous and authorized rejection of uninsured motorist coverage has not been proven; and, therefore, this Court considers the waiver to be ineffective.
Maryland presented testimony from the vice-president and the director of risk management of the service company, LP & L's vice-president, and Maryland's broker. It also introduced the service agreement between LP & L and the service company. The evidence showed that LP & L did not intend to purchase UM coverage for its leased vehicles and that no premium was paid for such coverage. However, the evidence also revealed that the person signing the waiver was not an employee of LP & L and had no specific authorization to do so. This person testified that, although he believed he had the authority to sign the waiver, he did not ask for permission to *1366 sign it nor did anyone at LP & L tell him to sign it.
Many of the cases cited by Maryland are inapplicable to the issue raised, since in those cases the alleged agent waiving UM coverage was an employee of the corporation obtaining insurance. In Thibodeaux v. Burton, 538 So.2d 1001 (La.1989), for example, the corporate president signed the waiver, the only issue being whether or not a corporate resolution was necessary. Our decision in Rainey v. Gerarve, 461 So.2d 464 (La.App.1984), writ den. 463 So.2d 601 (1985), is not controlling. In that case there was a factual finding that the person who executed the UM waiver was the proper person to do so. It is uncontradicted that the person who signed the waiver in the instant case was not an employee of LP & L, the insured; and the judge found as a matter of fact that the burden of proving authorization had not been met.
In light of the strong public policy in favor of UM coverage expressed in Roger v. Estate of Moulton, supra, we cannot say that the judge was clearly wrong in his conclusion that LP & L failed to waive effectively the otherwise mandatory coverage. We hold that Maryland was independently liable to Comberrel under the terms of its policy. It has no right to recover its payment to Comberrel from the other insurers, since the debt it paid was not the debt of another under the rules of subrogation.
RANKING AND CONTRIBUTION AMONG THE INSURERS
The Insurance Code deems certain insurance to be primary regardless of the terms of the policy, where the coverage is on the vehicle the injured person was occupying. La.R.S. 22:1406 D(1)(c)(ii)(aa). All the policies in question, Sunset, Maryland, International, and Pryke, were on the vehicle and are therefore primary under the terms of the statute (statutory primary). This results regardless of what the policies themselves may recite with regard to primary or excess liability (contractual primary or excess). The judge ruled that the insurers were liable in solido to Comberrel, as follows:
Sunset, up to its limit of $1,000,000.00
Maryland up to its limit of $250,000.00
Insurisk Certificate #797 from $250,000.00 up to $500,000.00
Insurisk Certificate #798 from $500,000.00 up to $1,000,000.00
Insurisk Certificate # 232 and International from $1,000,000.00 up to $5,000,000.00,
all "in accordance with the terms of their policies." In a later judgment, the judge ranked the insurers in the same order, adding the language "with liability to be apportioned on a pro-rata basis" modifying the phrase grouping Certificate # 232 and International.
Comberrel takes no position on the issue of contribution so long as all the insurers are held to be solidarily liable to her, but she does complain of the ruling denying her the right to execute against Pryke and International pending the appeal. She argues against the stay, claiming that forcing her to exhaust her remedies against Sunset and Maryland prior to executing against Pryke and International wrongly permits these solidary obligors the benefit of division.
Sunset argues that the loss should be borne by all insurers, pro rata in a 1:4.75 ratio, regardless of whether their policies deem them to be primary or excess, since all insurers should be deemed to be contractually as well as statutorily primary. Pryke does not appeal this issue but points out that the "pro rata" language in the judgment applies only to Insurisk Certificate # 232 and International. International argues that the Supreme Court grant of writs is res judicata on this issue. We reject this reasoning, since the Supreme Court said nothing more than, "The Court of Appeals is reversed and the order of the Trial Court is reinstated. The stay order of this Court is vacated and set aside."
*1367 The issue in Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982), was whether or not a UM insurer was solidarily liable with a tortfeasor for the purpose of interrupting prescription. That case recognized that solidary liability "does not alone determine the rights and obligations of the debtors in relation to each other." At 580.
The International policy's Declarations page provides with regard to underlying insurance:
$500,000.00 each occurence [sic] and in the aggregate (where applicable) as provided by Insurisk Certificate # 798 which is excess of $250,000.00 each occurrence and in the aggregate (where applicable) as provided by Insurisk Certificate # 797 which is excess of a self-insured retention of $250,000.00.
Under "Conditions", the policy provides that "the insurance afforded by this policy shall apply in like manner as the underlying insurance described in the Declarations." (See above.) It continues, stating that its liability shall not arise until "the insured, or the insured's underlying insurer [Pryke], has paid the amount of underlying insurance...." It concludes:
K. Other Insurance. If other valid collectible insurance is available to the insured which covers a loss also covered by this policy, other than insurance that is specifically purchased as being in excess of this policy, this policy shall operate in excess of, and not contribute with, such other insurance.
These provisions make International's policy contractually excess insurance.
The Insurisk certificates in question are labelled "Excess Indemnity Contract." In the body of the policy this language is found: "the protection afforded by this Policy shall be only in excess of any other valid and collectible insurance carried by said person or persons [the insured or its officers, directors, or employees]." Additionally, the policy provides that
It is hereby declared and agreed that the Insured [LP & L], if they so desire, may effect Primary Insurance for amounts less than, equal to, or greater than $250,000.00, being the amount which this policy pays the excess as specified in Item 5. It is understood and agreed, however, that in the event such primary insurance is effected by the Insured this policy will pay only the excess of the amounts recoverable under such Primary Insurance or $250,000, whichever is greater, subject always to the terms, conditions and limitations contained herein.
Another provision reiterates that if LP & L carries other policies, the underwriters "shall only pay excess of such other insurance." The Insurisk certificates are excess insurance by their terms.
Maryland's business auto policy provides that it is excess "over the limits that any employee may carry on his own automobile... while any such employee may be using his own automobile ... in the course of his employment." It also stipulates that Floyd Comberrel was an insured for purposes of the policy, since he was "anyone else ... using with your [LP & L's] permission a covered auto you own, hire or borrow ..."
For any covered auto you own this policy provides primary insurance. For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance....
When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.
The Sunset policy seems to define Comberrel as an insured: "Anyone else is an insured while using with your permission a covered auto you own, hire or borrow...." Of course, since it has been held to cover the automobiles owned by Commonwealth and leased to LP & L, Commonwealth is also an insured. With regard to the primary/excess issue, the policy reads, "For any covered auto you own this policy provides insurance. For any covered auto you don't own, the insurance provided by this *1368 policy is excess over any other collectible insurance."
By their terms, the Sunset policy is primary and the International and Pryke policies are excess. In Grapusa v. U.S. Fidelity and Guar. Co., 483 So.2d 1146 (La.App. 5th Cir.1986), writ den. 486 So.2d 735 (1986), we noted that two statutorily excess insurers were not on the same footing, since one of them was contractually primary. One of the policies was issued on the condition that another would be primary and exhausted first. We held, therefore, that the primary policy must be exhausted first before the coverage afforded by the excess insurer became available. See also Capone v. King, 467 So.2d 574 (La.App. 5th Cir.1985), writ den. 468 So.2d 1203, 1205 (1985), and Wright v. Aetna Cas. Ins. Co., 428 So.2d 851 (La.App. 5th Cir.1983), writ den. 434 So.2d 1091 (1983).
We affirm the trial judge's ranking of the various insurance policies and hold that Sunset, International and Pryke are liable in solido to Comberrel. As solidary obligors they are all liable to her according to the limits and terms of their policies but may seek contribution from each other according to their ranking. Comberrel may enforce her judgment against Sunset, International or Pryke when the matter has come to a final judgment, no appeals being pending.
COSTS
The judge assessed all costs of the proceeding against Sunset, International and Pryke following the trial on the merits. In a subsequent judgment clarifying the judgment on the merits and disposing of various motions for new trial and exceptions, the judge decreed that "each party is to bear its own cost for these proceedings."
Comberrel argues that the judge has created an ambiguity and urges us to recognize that he did not intend to reverse himself on this issue. We agree and believe the judge meant to assess all costs through the trial on the merits to Sunset, International and Pryke. Any costs attributable to the post-trial proceeding were to be borne by each individual party, however. This resolution is within the scope of La.C. Civ.P. art. 1920, and we affirm this portion of the judgment.
CONCLUSION
We hold that there has been no manifest error or abuse of discretion by the trial judge in this matter, and we therefore affirm his judgments in all respects. The costs of this appeal, in which each party was an appellant, must be borne by the party which incurred them.
AFFIRMED.