I,SOL GOTHARD, Judge.
In this legal malpractice action plaintiff, Sunset Insurance Company, Inc. (Sunset), appeals a judgment in favor of defendants, John G. Gomila, Jr. and Attorneys’ Liability Assurance Society, Inc., that dismissed plaintiffs claim. For reasons that follow, we affirm.
This matter has been before this court previously in Sunset Ins. Co. v. Gomila, 99-560 (La.App. 5 Cir. 2/29/00), 757 So.2d 82. In that opinion, Sunset appealed a judgment of the trial court that granted a defense motion for summary judgment. A majority of this court affirmed the trial court after agreeing that no material issue of fact remained to be decided and the defendant was entitled to judgment as a matter of law.[1] The Supreme Court reversed the opinion of this court, finding material issues of fact remaining to be decided and remanded the matter to the trial court for further proceedings.[2] After the remand the trial court conducted a jury trial on the merits. The jury found that the conduct of John G. Gomila, Jr. was not negligent in his representation of Sunset. It is that judgment that forms the basis of this appeal.
laThe original legal malpractice action was filed as a result of Gomila’s representation of Sunset in Comberrel v. Basford, 550 So.2d 1356 (La.App, 5 Cir.1989); writ denied, 556 So.2d 285 (La.1990). The facts of that case and the questions at issue were set forth in our first opinion in this matter as follows:
This dispute arises from actions taken by Gomila as the attorney for Sunset in the case of Comberrel v. Basford. In that case, Comberrel was killed in an automobile accident while working for LP & L and driving a company vehicle. The vehicle was leased from and owned by the Commonwealth Plan. Commonwealth was a wholly owned subsidiary of Bankers Leasing Corporation. Bankers was a wholly owned subsidiary of the Southern Pacific Railway Company.
*656 The defendant in Comberrel was uninsured, so the Comberrels sued the alleged UM carrier for Commonwealth, Sunset Insurance Company.
Sunset is an insurance company that is a wholly owned subsidiary of Southern Pacific. It was created specifically to meet the needs of Southern Pacific’s subsidiary companies, including Bankers. Policy CAGL-003 was issued by Sunset to Bankers and was originally intended to cover only six to eight corporate automobiles owned by Commonwealth, but there were ambiguities in the policy which led to a dispute in coverage.
The underwriting instructions for Policy CAGL-003 called for the inclusion of all subsidiaries of Bankers, including Commonwealth, as named insureds on the policy. The policy only listed Bankers as an insured. Also, the policy was to be limited to only six to eight corporate automobiles. This restriction was left out of the policy altogether.
Gomila was hired as defense counsel for Sunset in the Comberrel case. Before trial began, Gomila stipulated that Commonwealth was a named insured on the Sunset policy. At the conclusion of the trial, Sunset was cast in judgment for its limits under the policy ($1,000,-000.00).
On December 1, 1989, Sunset filed suit against Gomila alleging legal malpractice. Sunset alleged that the stipulation of coverage entered into by Gomi-la was false and was not authorized by Sunset. Gomila alleged that he was authorized to make the stipulation. He further alleged that even if the stipulation had not been made, the same outcome would have resulted and Sunset was not harmed by his actions. Sunset Insurance Co. v. Gomila, supra, 757 So.2d at 83-84.
As shown by the above factual synopsis, the central controversy in the legal malpractice action revolves around the stipulation entered into by Gomila on behalf of Sunset in the Comberrel v. Basford case. The stipulation, which ^established Commonwealth Plan as a named insured under the Sunset policy, was used as a basis for the finding of liability against Sunset in the Comberrel matter. Sunset maintains that the stipulation was neither authorized by, nor known to, any person in the Sunset organization. That stipulation and the result in the Comberrel case led to the filing of the action for legal malpractice that forms the basis of the instant matter.
In brief to this court, Sunset assigns two errors. In the first, Sunset argues the trial court erred in not allowing it to introduce expert testimony to explain the complex legal issues to the jury. Plaintiffs sought to introduce the testimony of Ralph S. Hubbard, as an expert in the area of insurance coverage defense. After the trial court’s ruling not to allow the testimony of Mr. Hubbard, Sunset proffered the testimony. Sunset argues the testimony was necessary to show the standard of care, the fault in having entered into the stipulation, and the fault in having failed to advise the client.
The record shows that plaintiff filed a motion in limine before trial seeking to exclude testimony from defense’s expert witness, Ralph Hubbard, on the grounds that his testimony would be irrelevant and unhelpful to the jury. After considering the arguments of counsel in open court and memoranda, the trial court found that the jury “would not be aided or assisted in reaching its decision by the testimony of expert witnesses in this case.” Accordingly, on August 14, 2001, the court rendered a judgment excluding all expert testimony from this trial.
LSA-C.C.E. art. 702 provides:
*657 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Expert testimony is admissible in legal malpractice cases to establish the standard of care exercised by attorneys in the locality. In certain cases, the opinion | f¡of experts may be essential to prove the standard of care an attorney must meet. Morgan v. Campbell, Campbell & Johnson, 561 So.2d 926, 929 (La.App. 2 Cir. 1990). In Contractors Supply & EQ-Orleans v. J. Caldarera & Co., Inc., 98-1010 (La.App. 5 Cir. 3/30/99) 734 So.2d 755, at 760, this court stated:
In reviewing the decision of a trial court in qualifying a witness as an expert, courts typically place the burden on the party offering the witness as an expert and consider that the decision to accept or reject the offer rests within the sound discretion of the trial court. The trial court’s function is to determine that all expert testimony which is admitted into evidence is both reliable and relevant. Furthermore, the refusal of the trial court to receive such evidence will rarely, if ever, provide grounds for reversal, (citations omitted)
In the instant matter, it is clear from the arguments made by counsel that the court found there is no standard of practice when the discussion concerns the approach to a case. The degree of aggressiveness, and the decision not to file a motion for summary judgment are professional decisions which may vary among attorneys, and do not constitute a standard of practice. We find no abuse of discretion or manifest error in that ruling. Further, we note that the entire case focused on whether the defendant had permission of plaintiff to sign an admission. That is a purely factual issue for the trier of fact. We believe Mr. Hubbard’s testimony would not assist the jury in making that decision. Thus, we find no merit in this assignment of error.
In the second assignment, Sunset argues that the jury finding of no negligence or fault on the part of Mr. Gomila is error. Sunset alleges that Commonwealth is not a named insured on the policy and there is no evidence, other than Mr. Gomi-la’s testimony, that Sunset authorized the stipulation that amounted to an admission of insurance coverage.
At trial the deposition of William Sewall, who was the senior vice-president of Bankers Leasing and Financial Corporation, the parent company of Commonwealth, was read into the record. Mr. Sewall testified that the company |fihired Mr. Gomila to represent it in the Comberrel case. During the deposition, Mr. Sewall was shown a letter sent to him from Mr. Gomila dated August 21, 1984 in which Mr. Gomila refers to a previous conversation regarding the instruction sheet provided by counsel for Comberrel, and the named insureds in the 1983-84 renewal policy. Although Mr. Sewall had no specific recollection of the conversation, he stated that he had no reason to believe that Mr. Gomila is incorrect in saying the discussion revolved around those instruction sheets and the listing of named insureds. Mr. Sewall further testified that Mr. Gomila was given permission to produce the Sunset policy to the opposition in the Comberrel case.
Curt Schultz, an attorney who joined the Bankers Group in November of 1984, was given.the primary responsibility of monitoring the Comberrel case. Mr. Schultz also testified by deposition. He sent Mr. Gomila a certified copy of the policy to be *658 produced pursuant to a subpoena duces tecum. However, both Mr. Sewall and Mr. Schultz testified that they relied on Mr. Gomila for advice on what the subpoena specifically required.
After the production of the Sunset policy, the plaintiffs in the Comberrel case added Sunset as a defendant, and Mr. Gomila was hired to represent Sunset in the litigation.
Defendant, John Gomila, testified at trial that he had a discussion with Mr. Sewall and Mr. Taggart, who represented Louisiana Power & Light, regarding the correct response to a subpoena duces tecum served by the plaintiff in the Comberrel case. Mr. Gomila stated he informed the other two men that if a policy covers Commonwealth, it must be produced. There seemed to be some inconsistencies between the policies as to the subsidiaries of Bankers listed as insureds. Therefore, Mr. Gomila asked for clarification of the situation. The instruction sheets for issuance of the Sunset policy were given to-Mr. Gomila. They showed that Sunset was to issue a policy covering Bankers and a list of its ^subsidiaries,' including Commonwealth. After further discussion, Mr. Sewall authorized Mr. Gomila to release the Sunset policy to plaintiffs. At that point, there was no dispute that the policy covered Commonwealth. The binders specifically purported to extend coverage to Bankers Leasing and all subsidiaries.
After the policies were produced, Sunset was added as a defendant and Mr. Gomila was retained to protect Sunset’s interest in the suit.' Mr. Gomila had conversations with John Edwards, who represented Sunset regarding the Comberrel suit. Mr. Gomila reviewed the policy and found that the uninsured motorist coverage was limited to $30,000, but the liability was $1,000,000. Mr. Gomila explained to Mr. Edwards that in Louisiana, if specific procedures were not observed, the uninsured motorist coverage equals the liability coverage. Mr. Gomila testified that he informed Mr. Edwards that if no valid waiver of uninsured motorist coverage, or selection of lower limits could be shown, the exposure for Sunset would be $1,000,000. Mr. Edwards undertook to find some evidence of a selection of lower limits or a rejection of uninsured motorist coverage. Mr. Gomila followed up that conversation with a letter verifying the telephone conversation. Mr. Gomila testified that Mr. Edwards never questioned whether Commonwealth was insured under the Sunset policy.
At the time of trial in the Comberrel case, plaintiffs counsel requested a stipulation. Plaintiffs counsel made it clear that, if there would be no stipulation, he would issue subpoenas to get additional information on how Sunset handled the case. This was relevant because of possible penalties for an arbitrary refusal to make payment. Mr. Gomila discussed the matter with Mr. Edwards. Mr. Gomila explained that the choice was to sign the stipulation that Commonwealth was a named insured and there was no selection of lower limits below the $1,000,000, or bring witnesses from California to Louisiana to testify about what happened when the policy was issued and why the claim was not paid. Mr. Gomila stated that no |Rone concerned, including Mr. Edwards and Mr. Schultz, wanted to spend extra money and time over an issue that was already settled. After considerable discussion, Mr. Gomila was authorized to sign the stipulation. Mr. Gomila further stated that the defense would be that the policy did not cover the specific situation in which Mr. Comberrel died.
In his deposition Mr. Edwards does not deny that conversation took place, he merely states that he does not recall what transpired. There is no other evidence re *659 garding the issue of whether Mr. Gomila was given either expressed or implied authorization to sign the stipulation that forms the basis of the malpractice claim.
This court may not overturn a factual finding by a jury absent a showing of manifest error or unless a particular finding of fact was clearly wrong. LeJeune v. Union Pacific R.R., 97-1843 (La.4/14/98), 712 So.2d 491, 494. The court of appeal may not reverse the jury in a finding of fact if the jury’s conclusions were reasonable ones pursuant to the record, even if convinced that it would have weighed the evidence differently. Id; Arnold v. Dufrene, 01-1179 (La.App. 5 Cir. 3/13/10), 815 So.2d 136, 140. Given that standard of review and the evidence presented at trial, we cannot find the jury’s conclusions of fact were manifestly erroneous or clearly wrong.
Accordingly, the judgment of the trial court is affirmed.
Defendant has filed exceptions of per-emption, no right of action and no cause of action in this court. In view of this opinion, these exceptions are denied as moot.

AFFIRMED.

. Cannella, J. dissented with reasons.

. Sunset Insurance Co. v. Gomila, 00-1428 (La.6/30/00), 765 So.2d 1056; reh. denied, 00-1428 (La.9/15/00), 767 So.2d 704.