568 So.2d 569 (1990)
Carol Ann Clapper, Wife of/and Jack FONTANA
v.
HIBERNIA NATIONAL BANK, et al.
No. 89-CA-1514.
Court of Appeal of Louisiana, Fourth Circuit.
September 25, 1990.
Philip A. Gattuso, Gretna, for plaintiff/ appellant.
Philip O. Bergeron, Cristina R. Wheat, Adams and Reese, New Orleans, for defendants/appellees.
Before GARRISON, BARRY, KLEES, PLOTKIN and BECKER, JJ.
GARRISON, Judge.
Carol Fontana Clapper had worked as a security guard since approximately December of 1978. In 1980 she was hired in this capacity by Wells Fargo who assigned her to work for Hibernia Bank. Ms. Clapper was working at the Hibernia Bank service center at 1111 Tulane Avenue in New Orleans, Louisiana. Her job entailed operating computer monitors and "mantrap" doors. Mantrap doors are electronically operated doors, used as an added security measure. On October 13, 1987, Ms. Clapper attempted to manually open these doors as they failed to open electronically.
As a result of this activity, Ms. Clapper claimed to have sustained an injury to her back. She instituted suit for damages against Hibernia Bank and its insurer alleging that the bank was strictly liable for the malfunctioning doors. Hibernia moved for and was granted summary judgment on the grounds that the plaintiff was Hibernia's statutory employee and was therefore barred from recovery except in worker's compensation.
Plaintiff has now brought this appeal. She contends that summary judgment was improperly granted as there remained a genuine issue of material fact.
*570 In order to prevail in its summary judgment Hibernia needed to show that there remained no genuine issue as to material fact, and that it was entitled to judgment as a matter of law. LA.C.C.P. 966; Chaisson v. Domingue, 372 So.2d 1225 (La.1979). Any doubt regarding the existence of a disputed factual issue is resolved against Hibernia as the mover for summary judgment. Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268 (La.1981).
A tri-level analysis for determining whether an individual is a statutory employee is set forth in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). The first stage is to consider the full scope of the work contract to determine whether or not the work is specialized. If the work is "specialized per se, as a matter of law the work is not part of the principal's trade, business or occupation, and the principal is not the statutory employer of the specialized contractor's employees". If, however the contract work is non-specialized, "the inquiry shifts to a comparison of the principal's trade business or occupation and the contract work to see if the latter can be considered part of the principal's trade, business or occupation". Berry, supra.
Specialized work requires a special degree of skill, training, education or experience not normally possessed outside the field in question. Berry, supra. The record indicates that, while very slight, the appellant had undergone specialized training for her position. Furthermore, the case at hand must be distinguished from Cantrell v. BASF Wyandotte, 506 So.2d 793 (La App. 1st Cir.1987), writ denied, 512 So.2d 1178 (La.1987), where the court held a security guard to be engaged in non-specialized work because the defendant directly employed security supervisors. Here, the appellant's supervisor was an employee of Wells Fargo. Assuming that the appellant's occupation was non-specialized, however, the second level of the Berry test requires a determination regarding whether the contract work could be considered part of Hibernia's trade, business or occupation.
Hibernia argues that safeguarding its deposits and assets is part of its business. We agree. However, in this portion of inquiry, Berry also requires consideration as to "whether the contract work as relates to the principal is handled ordinarily through employees".
Hibernia asserts that it does employ security personnel. The appellant contends that there are two or three of these individuals as opposed to 30 of Wells Fargo's employees and that these people investigate bank fraud and NSF checks, not at all the work of appellant. The appellant submitted affidavits by Wells Fargo employees stating that Hibernia's employees did not perform the same duties as appellant or the other Wells Fargo employees. Furthermore, the record indicates that the 1111 Tulane building differed substantially from Hibernia's other operations, including the type of security provided for the building.
These facts are also pertinent to the third level of the Berry analysis, determining whether or not the principal is engaged in the work at the time of the accident. Although the contract work may customarily be considered part of a principal's trade, business or occupation, if at the time of the alleged injury the principal had no employees doing work similar to the contract work, then the contract work will not be considered part of the principal's trade, business, or occupation as of the time of the injury. Holmes v. St. Charles General Hospital, 465 So.2d 117 (La.App. 4th Cir. 1985); Berry, supra.
The record in this case shows that questions remain regarding the defendant's alleged status of statutory employer. Because of these questions of material fact, summary judgment was improperly granted. Therefore, this case is reversed and remanded for a trial on the merits.
REVERSED AND REMANDED.
BARRY, Judge, dissents with reasons.
The primary issue is whether the plaintiff's training and equipment makes her a "specialized employee" and not a statutory employee.
*571 Plaintiff states that she had approximately three days of training in order to perform her duties. Apparently her principal responsibility was to monitor computers which controlled entrance and exit areas utilized by bank employees. Occasionally plaintiff walked in the building to observe and make her presence known. These functions are not "specialized" and certainly do not require a high degree of skill. The fact that she worked in that capacity over several years added to her experience, but it's inconceivable to say that experience converted a routine job to "specialized" work. In summary, the work performed by plaintiff could easily have been performed by a regular bank employee.
Furthermore, a host of cases have held that security work is not specialized. Sanders v. Baton Rouge Water Works, 552 So.2d 768 (La.App. 1st Cir.1989), writ denied 558 So.2d 1130 (La.1990); Mouton v. Louisiana Power and Light Company, 545 So.2d 1114 (La.App. 5th Cir.1989), writ denied 548 So.2d 1254 (La.1989); Verdun v. Carrollton S.C. Corporation, Inc., 499 So.2d 342 (La.App. 4th Cir.1986); Cantrell v. BASF Wyandotte, 506 So.2d 793 (La. App. 1st Cir.1987), writ denied 512 So.2d 1178 (La.1987).
It is beyond question that security is a critical function which is essential to the operation of a bank. If this single location (Hibernia Center) is considered, then Cantrell, supra is applicable. In Cantrell the court noted that the defendant was not equipped to handle the entire security program; however, as in this case, the Cantrell defendant employed supervisory personnel to handle security and the court concluded that plaintiff was a statutory employee.
Hibernia did not abandon all security functions in favor of Wells Fargo. It is incontroverted that Hibernia maintained security personnel at the subject location and throughout its banking locations.
The above review meets the guidelines of Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986). The record amply supports the logical conclusion that security work is an integral part of the business of any bank. I find no remaining genuine issue of fact. Nor does the record support a finding that the trial judge was clearly wrong by granting summary judgment.