589 So.2d 1226 (1991)
Mrs. Gloria BOURGEOIS, et al,
v.
PUERTO RICAN MARINE MANAGEMENT, INC., a/k/a Navieras De Puerto Rico.
No. 91-CA-0212.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1991.
As Amended November 19, 1991.
Writ Denied February 7, 1992.
*1228 Charles A. Kronlage, Jr., New Orleans, for plaintiffs/appellees.
Joel L. Borrello, Leslie A. Lanusse and E. Gregg Barrios, Adams and Reese, New Orleans, for defendant/appellant.
Richard S. Vale, Blue, Williams & Buckley, Metairie, for defendant/appellee.
Georges M. Legrand and C. William Emory, Hebert, Mouledoux & Bland, New Orleans, for intervenor/appellee.
Before KLEES, BYRNES and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendant Puerto Rico Marine Management, Inc. (PRMMI) appeals a trial court judgment in favor of plaintiffs, the survivors of Eldridge J. Bourgeois (Bourgeois), making numerous assignments of error. After considering all of PRMMI's claims, we amend the judgment and affirm.

FACTS
Bourgeois was fatally injured on December 19, 1986, when he was hit by a tractor driven by co-employee, Henry Glover, while engaged in his occupation as a stevedore for Cooper/T. Smith (Cooper). Cooper was under contract with PRMMI on a cost-plus basis to provide stevedoring services at PRMMI's France Road facility in New Orleans, where the accident occurred. PRMMI leased the facility from the Board of Commissioners, Orleans Levee District (Dock Board). PRMMI designed and constructed *1229 all the improvements on the property.
On the morning the accident occurred, Bourgeois was working as a clerk/checker, verifying numbers and checking seals on containers which were being unloaded from a ship docked at the facility. He was working in an intersection at the "South Gate," where an east/west road which connected the dock with the main yard crossed a north/south road used by workers to move empty containers from the main yard to the holding yard. An "inspector's shack," from which the checkers worked, was located in the roadway at the southwest corner of the intersection. Glover, who was driving an empty tractor, was making a left turn from the south to the west, around the inspector's shack, when he struck Bourgeois. A tractor with a container attached, driven by Cooper employee Lawrence Walker, was coming off the ship and was stopped on the east side of the intersection. The evidence presented at trial indicates that Walker signaled to Glover that Glover should proceed him into the intersection, although Glover had the stop sign. (See appended diagram.)
Bourgeois' survivors, including his wife and two adult daughters, brought suit against PRMMI and New Orleans Private Patrol Services, Inc. (NOPPS), which was under contract with PRMMI to provide security and safety services at the yard where the incident occurred. PRMMI filed a third-party demand against Cooper. Following a five-day trial, a jury returned a verdict, assigning 55 percent of the fault for the accident to PRMMI and 45 percent of the fault to Cooper. Mrs. Bourgeois was awarded $1,185,000, while each of the daughters was awarded $250,000. The jury made a separate award of $50,000 for Bourgeois' pain and suffering; that amount was divided equally between the three plaintiffs by the trial court judge. First, PRMMI contests the denial of its affirmative defense. Second, PRMMI alleges numerous legal errors in the trial judge's jury charges and evidentiary rulings which it claims entitles it to a de novo review of the jury verdict. Finally, PRMMI contests both liability and quantum.

I. AFFIRMATIVE DEFENSE
PRMMI's major contention on this issue centers on its claim that it is immune from liability for Bourgeois' death because it was Bourgeois' statutory employer under Louisiana's Worker Compensation Act at the time of the accident. The plaintiffs claim that PRMMI is not entitled to the statutory employer defense because the Longshore and Harbor Worker's Compensation Act (LHWCA) rather that the Louisiana Worker's Compensation Act applies to this case since Mrs. Bourgeois chose to receive benefits under the LHWCA after her husband's death.

A. Application of LHWCA

Since Bourgeois' death occurred on the land side of a waterfront cargo facility, it occurred in an area subject to concurrent state and federal jurisdiction. See Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980); Logan v. Louisiana Dock Co, Inc., 541 So.2d 182, 184 (La.), cert. dismissed 492 U.S. 939, 110 S.Ct. 30, 106 L.Ed.2d 639 (1989). One result of this fact is that Bourgeois' survivors had a right to choose between state workers' compensation benefits and federal LHWCA benefits. Poche v. Avondale Shipyards, Inc., 339 So.2d 1212 (La.1976), appeal dismissed Territo v. Poche, 434 U.S. 803, 98 S.Ct. 31, 54 L.Ed.2d 60 (1977). Mrs. Bourgeois chose LHWCA benefits.
On the basis of this selection of LHWCA benefits over state workers' compensation benefits, the plaintiffs contest PRMMI's right to raise the "statutory employer" defense, which would make PRMMI immune from liability under state law, but not under federal law. The plaintiffs would have this court rule that defenses available to defendants can be determined by a selection of benefits made by plaintiffs. They cite Poche in support of this position.
In Poche, the court initially held that a plaintiff who "availed himself of the benefits under the LHCA" did not have a cause *1230 of action under state law for injuries occurring in the area of concurrent state and federal jurisdiction, but that plaintiffs who "elected to sue under the state law and declined to accept LHCA benefits" did have a state cause of action. Id. at 1221. On rehearing, the court vacated its original judgment, citing a lack of "evidence in the record establishing that [the plaintiff] made an election, or a choice of L.H.C.A. remedies," saying that the record only contained "evidence that he has accepted benefits under the L.H.C.A. Act," and remanded the case "for the purpose of trying the issue of whether [the plaintiff] elected federal benefits." From this language, the plaintiffs in the instant case argue that state law defenses should not be available to defendants when the plaintiff has make a valid election of LHWCA benefits over state workers' compensation benefits.
However, the instant case is easily distinguished from Poche. In Poche, the sole issue considered by the court was whether persons injured while building ships had a cause of action under state law or whether their actions were under the exclusive jurisdiction of the LHWCA. In the instant case, the plaintiffs have filed a suit under state law and seek to prevent the defendants from raising state law defenses. The question at issue in Poche has been definitely decided in the affirmativeparties injured in places subject to concurrent state and federal jurisdiction do have a cause of action in state law; federal jurisdiction is not exclusive under those circumstances.
Moreover, even a cursory review of the caselaw on the subject, most of which is cited by plaintiffs, reveals that defendants are prohibited from raising the statutory employer defense only when the plaintiffs have chosen to sue under federal law. See Roberts v. Avondale Shipyards, Inc., 537 So.2d 808 (La.App. 5th Cir.1989) (Plaintiff filed a negligence action under the LHWCA and not under state law.); Gates v. Shell Oil, 812 F.2d 1509 (5th Cir.1987) (Plaintiff filed suit under the Continental Shelf Lands Act). The caselaw indicates that all provisions of state law apply, including the statutory employer defense, when the plaintiff files suit under state law, regardless of whether the plaintiff has received state workers' compensation benefits or federal LHWCA benefits. See Garvin v. Alumax, 787 F.2d 910 (4th Cir.1984), cert. denied 479 U.S. 914, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986); Trussell v. Litton Systems, Inc., 753 F.2d 366 (5th Cir.1984); Griffis v. Gulf Coast Pre-Stress Co., 563 So.2d 1254 (La.App. 1st Cir.1990), writ denied 568 So.2d 1054 (La.1990); Lewis v. Modular Quarters, 508 So.2d 975 (La.App. 3d Cir.), writ denied 514 So.2d 127 (La. 1987), cert. denied 487 U.S. 1226, 108 S.Ct. 2886, 101 L.Ed.2d 920 (1988).
Thus, the plaintiffs' contentions are rejected. Plaintiffs cannot be allowed to seek remedies under state law and, at the same time, to deny defendants the right to raise state law defenses. The trial court properly allowed the statutory employer defense to go to the jury.

B. Statutory Employer Defense

In the instant case, the jury specifically answered the following question in the negative: "Was the work being performed by Cooper T. Smith (sic) Stevedoring Inc. part of the regular trade, business or occupation of Puerto Rico Marine Management Inc.?" That jury finding precludes PRMMI's affirmative defense that it was Bourgeois' statutory employer and thus entitled to tort immunity. On appeal, PRMMI challenges that finding, arguing primarily that since cargo movement was the only function of PRMMI's France Road facility, where the accident occurred, stevedoring work is obviously part of PRMMI's trade, business, or occupation.
However, PRMMI oversimplifies the legal question. Under the provisions of LSA-R.S. 23:1032, workers' compensation benefits are the exclusive remedy of an employee who is injured during the course and scope of his employment duties; thus, employers are immune from tort liability for injuries sustained by employees under those circumstances. LSA-R.S. 23:1032, the "statutory employer" law, extends workers' compensation liability, and thus *1231 tort immunity, to the following two groups of "principals" other than direct employers: (1) those for whom the injured employee's work is part of their "trade, business, or occupation" ("one-contract cases"), and (2) those who contract with the injured employee's direct employer to perform work which the principal has contracted with another to perform ("two-contract cases"). See Humphrey v. Louisiana Power & Light Co., 546 So.2d 520, 522 (La.App. 4th Cir.1989). Since the instant case falls in the first category, only the cases interpreting one-contract situations will be considered.
At the time of the accident which resulted in Bourgeois' death, determination of statutory employer status in one-contract cases was controlled by the Louisiana Supreme Court's decision in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La. 1986).[1] Berry established the following three-level analysis for determining whether a principal was a statutory employer:
1. Was the contract work specialized?
2. Was the contract work a part of the principal's trade, business, or occupation?
3. Was the principal engaged in the work at the time of the alleged accident?
Id. at 937-38. The employer claiming the affirmative statutory employer defense has the burden of proof on this issue. Id. at 939.
Under the Berry analysis, a principal was not considered a statutory employer if the answer to the first question is "yes." If the contract work is specialized, it is automatically considered outside the scope of the principal's trade, business, or occupation. Thus, the principal asserting a statutory employer defense has the burden of proving that the contract work is not specialized. In answering the first question, courts must consider the "full scope of the work contract," not just the job performed by the injured employee. Fontana v. Hibernia National Bank, 568 So.2d 569, 570 (La.App. 4th Cir.1990).
In the instant case, PRMMI failed to introduce any evidence related to the first inquiry. PRMMI established that the clerk/checker job performed by Bourgeois required no special skills other than the ability to read and write, but elicited no information concerning whether the scope of the work contract at issuestevedoringis specialized. Thus, PRMMI failed to carry its burden on the initial question.
Since the statutory employer defense automatically does not apply if the work is specialized, PRMMI's failure to prove that the work contract at issue in the instant case was not specialized is enough to defeat the statutory employer defense. However, for purposes of this discussion, we will assume that stevedoring work is not specialized and go on to the second and third levels of the Berry analysis. Both the second and the third inquiries must be answered in the affirmative for the statutory employer defense to apply.
To assist courts in analyzing the second question, the Berry court listed the following inquiries for determining whether the contract work is a part of the principal's trade, business, or occupation:
(1) "Is the contract work routine and customary? That is, is it regular and predictable?"
(2) "Does the principal have the equipment and/or manpower capable of performing the contract work?" *1232 (3) "What is the practice in the industry relative to the contract work?"
Id. at 938.
Although PRMMI proved that stevedoring work is a "routine and customary," "regular and predictable" part of its trade, business, or occupation, it offered no evidence on whether PRMMI itself had the equipment and/or manpower capable of performing stevedoring work or whether it was the practice of the industry to contract out stevedoring work or have the principal's own employees perform the work. Thus, PRMMI failed to carry its burden of proof on the second inquiry of the Berry analysis.
On the third inquirywhether the defendant was engaged in the work at the time of the alleged accidentPRMMI offered evidence that the company's own employees were performing stevedoring work at its home facility in San Juan, Puerto Rico on December 19, 1986. Even assuming that this fact is sufficient to meet PRMMI's burden of proof on the third level of the Berry analysis, PRMMI is nonetheless not entitled to tort immunity based on a statutory employer defense because it failed to prove the other two necessary elements. Thus, the jury finding that PRMMI was not Bourgeois' statutory employer was not manifestly erroneous and must be affirmed.

II. ALLEGED LEGAL ERRORS
PRMMI alleges that the trial judge made numerous legal errors in the jury charges and in evidentiary rulings related to expert testimony. The cumulative effect of these numerous errors, the defendant claims, mandates de novo review of the record on the liability and quantum issues. See McLean v. Hunter, 495 So.2d 1298 (La.1986); Parmelee v. Martin Marietta Michoud Aerospace, Inc., 566 So.2d 441 (La.App. 4th Cir.1990).

A. Jury Charges

In its appellate brief, PRMMI discusses approximately eight alleged errors in jury instructions given by the trial judge. However, a review of the record reveals that the defendant made specific objections at trial to only two of the errors discussed. In order to preserve an objection to a jury charge for appeal, a party must specifically object at trial and must state the reasons for the objection. La. C.C.P. art. 1793; Chaisson v. D.H. Holmes Realty Co., Inc., 583 So.2d 1258 (La.App. 5th Cir.1991); Kolmaister v. Connecticut General Life Ins. Co., 370 So.2d 630, 633 (La.App. 4th Cir.), writ denied 373 So.2d 531 (La.1979). A general objection is insufficient. Id. Thus, we will consider only the assignments of error related to the effect of the "statutory employer" defense on the verdict and the standard of care owed to the plaintiff by PRMMI.

1. Effect of "Statutory Employer" Defense

Question 7 of the jury interrogatory form asked: "Was the work being performed by Cooper T. Smith Stevedoring Inc. part of the regular trade, business or occupation of Puerto Rico Marine Management Inc.?" PRMMI contends that the trial court erred in informing the jury that an affirmative answer on this question would deprive the plaintiffs of any recovery.
The statutory employer issue first came up at trial during the plaintiff's questioning of Eric Jupiter, PRMMI's operations manager. The trial court made the following statement:
The law of Louisiana says that a man working for a company is entitled to compensation. If he's entitled to compensation he cannot file suit for damages against his employer. Okay. Section 6 we call it, of the Act, says that not only pertains to his immediate employer, it also pertains to what we call a statutory employer and that means this, it started really in the lumber business out in the country. I'll give the historical aspect of it, it will be less risky of making confusion on this explanation of law, it used to be lumber companies out in the country would hire little-bitty jackleg guys to clear their forests for them and these guys wouldn't have any insurance and *1233 they'd say, okay, you go hire three fellows to help fill up your truck and one of them breaks his neck that's your problem, because I don't have any insurance, you don't have, all you own is your truck anyway. And the Legislature said this is a rotten deal, we're going to make it so that if a company is engaged in a business and it chooses to let out part of its regular trade, business or occupation to a subcontractor, the subcontractor's employees can file a compensation claim against the principals, you know, the big boys, the big company, and this way make some deep pockets for compensation, that's what it was all about. That notion now permeates all kind of industries in Louisiana. Very frequently a company for its own purposes will choose to sublet some part of its regular trade, business or occupation. Some typical examples are janitorial services in a major factory, the factory doesn't want to hire its own people to run mops so they will hire Acme Janitorial, and then the employees of Acme maybe can't sue the plant, Exxon, because that janitorial work at a major plant is a regular trade, business or occupation of running an oil company, okay, you've got to clean it up to run an oil company. They owe comp, therefore, they can't be sued in damages. Now the decedent here was employed by Cooper/T.Smith, a stevedoring company. He has filed a damage claim against PRMMI who operated this terminal. You are going to have to decide, because PRMMI says, hey, first of all we are not negligent, but if we are, we have a defense because what the stevedoring company was doing, what Mr. Bourgeois was doing is part of our regular trade, business or occupation, and if that's true, even if they are negligent, they can't be sued in damages. Okay. It's a defense and its going to be on your interrogatories. This element of the case concerns the proof involved in the ultimate issue, was Cooper Stevedoring and Mr. Bourgeois, in particular, doing the regular trade, business or occupation of Puerto Rico Marine Management, Inc. on the day he died. Okay. And that's what this is all about. [sic]
Trial transcript, Vol. VII, pages 213-217. The record reveals that PRMMI made no objection to this statement when it was made.
The jury charge pertinent to the statutory employer defense follows:
PRMMI also claims that even if it was at fault and contributed to the accident, which it denies, it says it cannot be liable because at the time of his death Mr. Bourgeois' employer, Cooper/T. Smith Stevedoring, was doing work which was part of the regular trade, business or occupation of PRMMI. PRMMI bears the burden of proving this defense. If you should conclude that in fact, the work performed by Cooper/T.Smith was part the regular trade, business or occupation of PRMMI, PRMMI would be considered the statutory employer of Mr. Bourgeois and, as such, would be immune from any claim for damages because of his death.
Trial transcript, Vol. X, pages 27-28. PRMMI's counsel did object to the instruction after all the jury charges were completed.
The statutory employer issue arose once moreduring jury deliberations, when the jury foreperson asked specifically about the effect of the statutory employer defense on the verdict. PRMMI alleges in brief that the trial judge initially told the jury that the defense would preclude recovery by the plaintiff and admonished the jury that their verdict should be based solely on the evidence presented at trial only after the defendant objected. However, the record does not support that interpretation. In a proces verbal dictated the day after the question came up, the trial judge stated as follows:
[T]he forelady of the jury came to the Chambers with a request concerning question Number 7 on the jury verdict in the presence of the attorneys, specifically, she wanted to know the effect of the answer to that question. I told her then that she should notthat the jury should *1234 not consider the legal consequences of their answer, but should answer the question as posed in accord with the instructions given on the point. Shortly thereafter, the jury requested to be reinstructed on this point. I re-read them the charge concerning the statutory employer defense and again admonished the jury to answer the question as posed and not consider the legal consequences. They again retired to deliberate and shortly thereafter returned with the verdict.
Trial transcript, Vol. X, supplementary pages 2-3. No objection to the content of the proces verbal was entered.
PRMII argues that the cumulative effect of the trial court's repeated instructions on the statutory employer defense, and especially the revelation of the effect of that defense on the verdict, resulted in prejudice.[2] In response, the plaintiffs allege that the statutory defense issue was discussed by PRMMI's counsel in both opening and closing arguments. Of course, neither opening nor closing arguments are included in the record.
Because our review of the record reveals that the trial court's instructions on this issue were perfectly proper, we reject PRMMI's arguments. La.C.C.P. art. 1792, which outlines the judge's responsibility to explain the law to the jury, states as follows:
A. At any time during the trial, the court may instruct the jury on the law applicable to any issue in the case.
B. After the trial of the case and the presentation of all the evidence and argument, the court shall instruct the jurors on the law applicable to the cause submitted to them.
PRMMI does not contend that the trial judge in the instant case stated the law relative to the statutory employer defense incorrectly. Additionally, PRMMI failed to even object to the judge's instructions on the defense when it came up during the questioning of Jupiter. Finally, the record, taken as a whole, does not indicate that the judge's instruction on this issue prejudiced the jury verdict. As discussed in the previous section, PRMMI failed to carry its burden of proof on the statutory employer defense. Since the jury verdict on this issue was correct, PRMMI cannot claim it was prejudiced by improper considerations.

2. Standard of Care

In charging the jury on the standard of care owed by PRMMI to the plaintiff, the trial judge stated as follows:
Now, as the legal custodian of the involved work site and as the business entity for whose benefit the activity was conducted, PRMMI had a duty to provide a reasonably safe work place for all workers in its facility. PRMMI had a duty to exercise such attention, perception of the circumstances, and judgment as a reasonable person would have done, so that it might recognize whether the conduct of its business activities involved an unreasonable risk of harm.
Some work is necessarily dangerous. The question is, whether PRMMI exercised reasonable care to avoid any unreasonable risk of harm.
PRMMI was required to know that a certain amount of negligence exists in the world, and that occasional inattention and negligence is one of the ordinary incidents of human life. And the precautions that it was required to take should have anticipated such negligence. It is not due care to depend on the exercise of care by another when such reliance is accompanied by forseeable [sic] danger.
PRMMI challenges the above instruction, making two arguments: (1) that Cooper/T. Smith, not PRMMI, had the duty to provide a safe workplace and (2) that the standard of care outlined in the last paragraph of *1235 the charge was heightened to a standard applicable only to utility companies. We reject both arguments.
First, the instruction charging that PRMMI had a duty to provide a safe work place was absolutely correct. Although employers do have that duty under Louisiana law, other principals also have that duty when they have control over the premises. Canter v. Koehring, 283 So.2d 716 (La.1973); White v. C.F. Industries, 411 So.2d 511, 514 (La.App. 1st Cir.), writ denied 413 So.2d 509 (La.1982).[3] Thus, the defendant's first argument on this issue has no merit.
PRMMI also claims that part of the instruction on negligence was based on Levi v. Southwest Louisiana Electric Membership Co-Op, 542 So.2d 1081 (La.1989), which allegedly established a heightened duty of care owed by utility companies. Even if that allegation is true, our review of the instructions on this issue, considered in their entirety, convinces us that the instruction did not mislead the jury into imposing an improper heightened standard of care on the defendant. The charge, taken as a whole, properly charged the jury on the duty/risk analysis applicable to the defendant. Thus, this assignment of error has no merit.

B. Alleged Evidentiary Errors

PRMMI alleges that the trial judge made the following errors in evidentiary rulings: (1) inconsistent rulings on the admissibility of expert testimony, (2) admission of opinion testimony from lay witnesses, (3) exclusion of testimony from Harbor Police Superintendent Archie Ben, and (4) failure to grant a mistrial after plaintiffs' counsel revealed a post-accident remedial measure while asking a question.

1. Admissibility of Expert Testimony

At trial, the plaintiffs offered the testimony of John F. Exnicios, as an expert in traffic engineering and traffic safety. Among other things, Exnicios testified that, in his opinion, conditions present at the PRMMI facility on the day of the accident "contributed to or caused plaintiff's accident." Among those conditions were the following: (1) presence of a stop sign 40 feet back from the intersection, (2) presence of the guard shack which might have obstructed the driver's vision, and (3) absence of a recognized traffic-control device which resulted in a third party cuing the driver to precede him into the intersection. All three of these conditions violated standard traffic engineering principles, Exnicios stated.
In response, PRMMI presented the testimony of Dr. Davy L. Bernard, who was recognized as an expert in physics, accident analysis, and accident reconstruction; Dr. Bernard admitted that he had no expertise in traffic engineering. When PRMMI's counsel questioned Dr. Bernard concerning his opinion of the cause of the accident, Dr. Bernard stated that the accident was caused by the fact that neither Glover nor Bourgeois was exhibiting the proper lookout. The trial judge disallowed the testimony, saying it was not expert opinion. The trial judge stated that Dr. Bernard was merely serving as a thirteenth juror because his opinion was based on the same evidence available to the jury.
The defendant then proffered Dr. Bernard's testimony. Dr. Bernard stated that his opinion on the cause of the accident was based on the "literature" he read, presumably some of the depositions taken in the case. Additionally, Dr. Bernard went to the scene of the accident, took measurements, then made "site observations" based on testimony from witnesses. Specifically, Dr. Bernard had someone stand in the spot where Bourgeois was believed to be standing at the moment of impact, while he rode in a tractor which drove the route witnesses believed Glover had taken; Dr. Bernard attempted to determine when Bourgeois became visible to Glover. Although the trial judge allowed Dr. Bernard to testify concerning site lines, the testimony *1236 relative to the cause of the accident was disallowed.
PRMMI claims that the trial judge committed reversible error by ruling inconsistently on the admissibility of expert opinion relative to the cause of the accident. The trial judge justified his decision to allow Exnicios' testimony by saying it was properly based on traffic engineering principles.
In considering this issue, we note initially that PRMMI's counsel failed to object to the admission of Exnicios' testimony regarding the cause of the accident. Therefore, that issue was not preserved for appeal and will not be considered here. Only the question of whether the trial court properly excluded Dr. Bernard's testimony on this issue will be considered.
Trial judges are generally given wide discretion in determining whether a question or subject falls within the scope of an expert witness' field of expertise. Nichols v. U.S. Rentals, Inc., 556 So.2d 600, 609 (La.App. 5th Cir.), writ not considered 558 So.2d 597 (La.1990). After reviewing the trial court's reasons for disallowing Dr. Bernard's testimony, we find no abuse of discretion. The record indicates that Dr. Bernard based his opinion solely on conclusions of selective witnesses concerning Bourgeois' location at the time of the impact and the route taken by Glover. In drawing his conclusions, Dr. Bernard necessarily made certain factual findings which should be left solely to the decision of the jury. Thus, the trial court's ruling is affirmed.
PRMMI also contests the trial court's rejection of the testimony of Officer Moses Pettis as to the cause of the accident. Like Dr. Bernard, Pettis, who investigated the scene of the accident, was qualified by the court as an expert in accident reconstruction. The trial judge excluded his opinion concerning the cause of the accident, finding that it was not expert testimony, but an evaluation of the credibility of the witnesses. We agree. Pettis' conclusions concerning the cause of the accident were necessarily based on factual findings which should be left to the jury. The trial court's exclusion of the opinion was not an abuse of discretion. PRMMI's contentions on this issue have no merit.

2. Admission of Opinion Testimony from Lay Witnesses

La.C.E. art. 701 allows admission of opinion testimony from lay witnesses whenever the following two conditions are present: (1) the opinion is rationally based on the perception of the witness and (2) the opinion is helpful to a clear understanding of his testimony or the determination of a fact in issue. The trial judge allowed two of the witnesses, Lawrence Walker and Al Roux, to testify that the intersection where the accident occurred was dangerous at times of heavy traffic congestion. The defendant claims that this testimony did not meet the requirements of La.C.E. art. 701 because it was not helpful to a clear understanding of the witnesses' testimony or to the determination of a fact at issue since both witnesses admitted that the intersection was not heavily congested at the time of the accident in question.
We find no abuse of the trial court's discretion on this issue. The alleged dangerous nature of the intersection in question was a pertinent issue to be decided by the jury and the opinion of the lay witnesses on the issue was undeniably helpful to the jury since the witnesses were intimately familiar with the area in question. Additionally, the fact that both witnesses admitted on cross-examination that the intersection was not heavily congested at the time of the accident helped the jury place the opinion in the proper perspective. This assignment of error has no merit.

3. Exclusion of Superintendent Ben's Testimony

During the examination of Harbor Police Superintendent Archie Ben, the defendant asked whether he had received any report of unsafe conditions at the PRMMI facility. The trial judge sustained the plaintiffs' objection to the question, finding that the question was irrelevant because it contained a negative inference. The trial judge found that the defendant was improperly trying to prove that no unsafe *1237 conditions existed because no one ever reported them to the witness.
Again, we find no abuse of discretion in the trial judge's decision on this matter. The question as posed by the defendant would have had very limited relevancy.

4. Failure to Grant Mistrial

During cross-examination of Henry O. Lee, who served as PRMMI's safety director at the time of the accident, plaintiffs' counsel asked the following
Now, counsel asked you a question if you knew of any other accidents that had taken place in addition to the one involving Mr. Bourgeois at any time when you were safety director and you [sic] answer was no. Is it not a fact that during the time when you were still safety director and after Mr. Bourgeois' accident, this shack was actually moved[?]
This question was asked in violation of a stipulation that no testimony relative to the movement of the shack would be admitted. Counsel for PRMMI objected vigorously and requested a mistrial, which the trial court denied. The trial judge severely admonished plaintiffs' counsel, but chose to give a corrective instruction to the jury rather than granting a mistrial. Plaintiffs' counsel stated that he had not intended to broach the subject, but felt that the door had been opened by questions from PRMMI's counsel. On appeal, PRMMI contends that the admonition to the jury was insufficient to repair the damage to its case.
The application of a motion for mistrial to civil cases was explained by this court in Searle v. Travelers Ins. Co., 557 So.2d 321 (La.App. 4th Cir.1990) as follows:
The Louisiana Code of Civil Procedure does not expressly provide for mistrials, and the jurisprudence concerning motions for mistrial is limited. Generally, mistrials are properly granted because of some fundamental failure in the proceeding. It is well settled in Louisiana law that a motion for mistrial in a civil case should be granted under the following circumstances: (1) when, before the trial ends and the judgment is rendered, the trial judge determines that it is impossible to reach a proper judgment because of some error or irregularity and (2) where no other remedy would provide relief to the moving party. Motions for mistrial should also be granted upon proof of prejudicial misconduct occurring during a jury trial, which cannot be cured by admonition or instructions.
A trial court is granted great discretion in determining whether to grant a mistrial since mistrials are not a matter of right.
Id. at 323. (Citations omitted.)
Introduction of evidence of subsequent remedial measures is not allowed under La.C.E. art. 407 "to prove negligence or culpable conduct in connection with the event" which is the subject of the trial. Thus, the plaintiff in the instant case attempted to introduce inadmissible evidence. However, under the above standard, that fact does not automatically entitle the defendant to a mistrial.
The trial judge in the instant case concluded that the improper introduction of the evidence could be cured by an admonition to the jury. The question concerning the removal of the guard shack was never answered by the witness, and the judge simply reminded the jury that questions cannot be considered evidence. The defendant has not demonstrated that the admonition was insufficient to repair any harm occurring from the statement made by plaintiffs' counsel. Thus, we decline to disturb the trial judge's discretionary decision. This assignment of error has no merit.
Since we have rejected all the defendant's arguments related to the alleged evidentiary errors made by the trial court, the de novo standard of review is not applicable. We will review the liability and quantum issues under the manifest error standard.

III. LIABILITY
PRMMI claims that the evidence presented at trial was insufficient to prove that any conduct on its part contributed to Bourgeois' death. Additionally, PRMMI *1238 claims that Bourgeois should have been found contributorily negligent, and that NOPPS should have been found liable for the accident.

A. PRMMI's Negligence

The defendant claims that the jury improperly found that PRMMI was negligent in causing the accident for two reasons. First, PRMMI argues that "the accident occurred because neither Glover nor Bourgeois maintained a proper lookout or was properly aware of his surroundings." Second, PRMMI maintains that Exnicios' testimony was the only evidence offered against PRMMI.
In brief, PRMMI quotes the testimony of Lawrence Walker in support of its first contention on this issuethat the cause of the accident was the inattention of Glover and Bourgeois. However, that argument ignores the fact that any number of parties can be liable for the accident. Even if Glover and/or Bourgeois were negligent, PRMMI could also have been negligent and therefore would be subject to liability for the accident.
PRMMI's second argument on this issue is that Exnicios' testimony is the only evidence supporting a finding of liability on its part. PRMMI attempts to discredit Exnicios' opinions point by point, saying they were "belied and negated by the facts in evidence."
Both of PRMMI's arguments beg the question. In reviewing a trial court record for sufficiency of the evidence, appellate courts are bound to affirm the findings of fact except under very narrow circumstances. The proper standard of review was succinctly summarized by the state supreme court in Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990) as follows:
Louisiana's three-tiered court system allocates the fact finding function to the trial courts. Due to that allocation and the trial court's opportunity to evaluate live witnesses or to evaluate a mixture of deposition and live testimony, great deference is accorded to the trial court's factual findings. Where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is the most credible. Consequently, on appellate review the trial court's reasonable factual findings, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed.
Absent "manifest error" or unless it is "clearly wrong," the jury or trial court's findings of fact may not be disturbed on appeal.
Id. at 1111. (Citations omitted.) This standard of review is based upon the principles established in Canter v. Koehring Co., 283 So.2d 716 (La.1973) as follows:
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trier of fact's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
Id. at 724.
The record in the instant case reveals the following "reasonable inferences of fact" which support the jury's decision that PRMMI was at fault in causing the accident: PRMMI leased the facility from the Dock Board and maintained control of the facility. An inspector's shack, from which pedestrians worked, was placed in the roadway at the southwest corner of the intersection. Traffic moved in four directions at the intersection where the accident occurred, but there were no dividing lines and *1239 one of the stop signs was placed 40 feet back from the intersection. PRMMI officials had determined that the maximum safe speed limit in the yard was 10 mph, but the tractors driven by the workers, which were owned by PRMMI, had no speedometers and were not governed to 10 mph. No other efforts were made to enforce the 10 mph speed limit; no signs were posted. None of the vehicles used in the yard had yellow flashing warning lights. At busy times, as many as 400 containers crossed the intersection in a day. Drivers often came in close proximity with the inspector's shack; it had been hit at least once. The inspector's shack could easily have been moved to a different location in the yard. The tractor's transferring the empty containers could easily have been given a different route to avoid the intersection. PRMMI officials were aware of the conditions at the South Gate intersection. The intersection was "dangerous," especially during times of heavy traffic congestion.
Under Louisiana law, negligence of a party is controlled by a duty/risk analysis, which involves the following four-prong test:
I. Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred?
II. Did the defendant owe a duty to the plaintiff?
III. Was the duty breached?
IV. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
Certainly it was reasonable for the jury to conclude that some conduct on PRMMI's part was a cause-in-fact of the accident which resulted in plaintiff's death. Second, PRMMI unquestionably owed Bourgeois a duty to provide a safe workplace, as stated above. Third, based on the above reasonable inferences, the jury could reasonably have concluded that PRMMI breached that duty to the plaintiff. Fourth, certainly the risk of severe injury or death is within the scope of the duty to provide a safe workplace. Thus, the jury's decision on this issue was not manifestly erroneous. This assignment of error has no merit.

B. Bourgeois' Comparative Negligence

In apportioning fault for the accident, the jury assigned 0% to the decedent. PRMMI contends that this finding was incorrect because Bourgeois had a duty of keeping a proper lookout which he failed to fulfill.[4]
PRMMI's only specific argument on this issue is that Bourgeois was comparatively negligent as a matter of law if he failed to see Glover's vehicle when he had an opportunity to do so, citing Turner v. New Orleans Public Service, Inc., 476 So.2d 800 (La.1985) and Williams v. Orleans Parish School Board, 541 So.2d 228 (La.App. 4th Cir.1989).
Louisiana's law of comparative negligence is governed by La.C.C. art. 2323, which contains no provisions concerning burdens of proof. However, that article states that comparative negligence principles apply "[w]he contributory negligence is applicable to a claim for damages." Thus, we must look to the law of contributory negligence on this issue. La.C.C.P. 1005 states that contributory negligence is an affirmative defense which must be pled by the defendant in his answer. It also must be proven by the defendant by a preponderance of the evidence. Dofflemyer v. Gilley, 384 So.2d 435 (La.1980).
Even assuming that the defendant's argument on this issue is valid, PRMMI had the burden of proving that Bourgeois was not paying attention at the time of the accident and that he failed to see Glover's vehicle when he had an opportunity to do so. The jury's conclusion that PRMMI failed to meet that burden is not manifestly erroneous. The record indicates that Bourgeois was performing his job as he was required to do. The fact that some of the witnesses testified that Bourgeois *1240 either had his back to Glover's vehicle or was looking at his clipboard does not make him comparatively negligent as a matter of law, as PRMMI suggests, since his job responsibilities required him to look at numbers on vehicles and match them with numbers on a clipboard. The defendant's argument on this issue has no merit.

C. NOPPS' Alleged Negligence

PRMMI claims that its contract with NOPPS required the security service to enforce traffic safety rules on the premises where the accident occurred. PRMMI admits that NOPPS had no duty to provide routine traffic control, but claims the service did have a duty to keep the premises safe and to prevent losses. This obligation, PRMMI claims, was broad enough to make NOPPS responsible for some percentage of the damages suffered by the plaintiffs. PRMMI also claims that NOPPS had a duty to provide traffic control if the intersection was congested at the time of the accident.
The preponderance of the evidence presented at trial indicates that NOPPS not only had no duty to provide traffic control, but that it did not have the authority to do so. That authority rested in the Harbor Police, who had jurisdiction over the area, according to the testimony of both Leonard Gurvich, president of NOPPS, and Harbor Police Superintendent Ben. Additionally, Gurvich testified that NOPPS' only duty was to prevent unauthorized vehicles and personnel from gaining access to the premises and to provide security for worker's vehicles. The jury's conclusion that NOPPS had no liability for the plaintiffs' damages was not manifestly erroneous. This assignment of error has no merit.

IV. QUANTUM
The jury awarded the plaintiffs the following amounts:

Mrs. Bourgeois $1,185,000
Mrs. Jackson 250,000
Mrs. Holmes 250,000
Mr. Bourgeois' pain and suffering 50,000

The final judgment also awarded Mrs. Bourgeois the stipulated expenses of the funeral and divided the $50,000 pain and suffering award among the three plaintiffs.
PRMMI claims that the above awards were excessive because they were clearly "influenced by prejudice, passion, sympathy or other extraneous matters."
In deciding whether a trial court award was excessive, reviewing courts must first consider the individual circumstances of the subject case to determine whether the trial court abused its much discretion in setting the award. Bernard v. Royal Insurance Co., 586 So.2d 607, 612-13 (La.App. 4th Cir.1991). The following rule applies:
The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it.
Amedee v. Cruse, 526 So.2d 433, 433 (La. App. 4th Cir.1988), citing Bitoun v. Landry, 302 So.2d 278, 279 (La.1974). Only after determining that the award in the subject case was improper may the reviewing court consider awards in similar cases. Amedee, 526 So.2d at 436. Using the similar cases as guidance, the reviewing court may then increase or decrease the award only to the lowest or highest award which would have been within the trial court's discretion. Id. A jury's award cannot be found excessive as a matter of law simply because of its size. Bernard, 586 So.2d at 612-13. General damages must be determined on a case-by-case basis since they do not have a common denominator. Id. at 617. A trial court's attempt to measure the monetary value of intangibles such as grief, loss of love and affection, and loss of companionship are necessarily subject to great discretion. Comberrel v. Basford, 550 So.2d 1356, 1362 (La.App. 5th Cir.1989). Thus, the basic question to be considered is whether the general damage award is so high as to shock the conscience of the reviewing court. Brooks v. City of Baton Rouge, 558 So.2d 1177, 1182 (La.App. 1st Cir.1990).
In the instant case, the decedent was 58 years old at the time of his death. *1241 The plaintiff's economic expert, Dr. Seymour Goodman, testified that the decedent had a life expectancy of 19.6 years. The three plaintiffs also testified concerning their relationships with the decedent, indicating that he was an exemplary husband, father, and grandfather.
After reviewing the record, we find the awards so high that they shock the conscience. Certainly Mr. Bourgeois' wife, children, and the grandchildren miss him enormously. As in Brooks, the evidence indicates that the Bourgeois family was very close, but contains no evidence that any member of the family suffered unusual psychological or emotional damages because of Mr. Bourgeois' death. Id. Therefore, the jury clearly abused its discretion in setting the awards.
Having found that the jury awards were improper, we will now look to recent cases awarding damages to survivors of persons killed as a result of other people's negligence to determine the highest possible awards the jury could have set under the circumstances of this case.

A. Mrs. Bourgeois' Damages

The jury awarded Mrs. Bourgeois a $1,185,000 lump sum award, including both special damages and general damages.
Dr. Goodson estimated the past and future economic losses suffered by Mrs. Bourgeois, both before and after taxes, based on work life expectancies of both 65 and 70, making adjustments for Mr. Bourgeois' personal consumption. The totals were as follows:

 Before Taxes After Taxes
Age 65 $245,522.82 $185,096.35
Age 70 $401,673.35 $290,835.32

The defendant speculates that the $1,185,000 award to Mrs. Bourgeois was based on adding $1 million general damages to Dr. Goodman's estimated $185,000 after taxes special damages based on the assumption Mr. Bourgeois would have worked to age 65. The defendant contests the inclusion of fringe benefits in that figure. The plaintiffs challenge PRMMI's statements on this issue, saying it is speculative to assume that only $185,000 of the award to Mrs. Bourgeois was for loss of past and future wages and fringe benefits. The plaintiffs claim that the jury could have set the special damages award as high as $450,000, assuming a before-taxes value, if the jury believed that Mr. Bourgeois would have continued to work until he was 70. The plaintiffs claim that the jury could easily have concluded that Dr. Goodson's figures estimating Mr. Bourgeois' personal consumption were too high based on the evidence that the decedent was very frugal.
After reviewing the record, we believe that the only reasonable interpretation of the jury's award to Mrs. Bourgeois is to assume that $185,000 represents loss of economic benefits, and the remaining $1 million was a general damage award. Despite PRMMI's arguments to the contrary, we find that the record provides ample support for a $185,000 special damage award. However, the general damage award is grossly disproportionate to awards in other similar cases and must be reduced.
Our review of other cases involving deaths caused by the negligence of third parties indicates that general damage awards to surviving spouses traditionally fall between $150,000 and $325,000, with the greatest number of awards being approximately $300,000.[5]
However, the fact that general damage awards to surviving spouses do not often exceed $300,000 does not limit the trial court to that amount. Obviously, in this case, the jury was very impressed by the testimony of Mrs. Bourgeois regarding the effect of her husband's death on the quality of her life. Under the circumstances, we believe the jury had the discretion to *1242 give a higher award than the $300,000 which is most common. We believe the highest general damage award the jury could reasonably have awarded to Mrs. Bourgeois was $500,000. Thus, Mrs. Bourgeois' total award is reduced to $685,000.

B. Daughters' Damages

The jury awarded $250,000 general damages to each of Mr. Bourgeois' two daughters. The evidence indicates that both of the Bourgeois' daughters were adults, living away from their parents' home at the time of their father's death; nothing in the record indicates that either one of them was dependent on Mr. Bourgeois for financial support.
A review of the jurisprudence reveals that general damages awarded to major children are traditionally lower than the awards given to minor children. Thomas v. State Farm Insurance Co., 499 So.2d 562, 566 (La.App. 3d Cir.1986). Most recent cases dealing with awards to major children set the general damage awards between $50,000 and $100,000, with the majority being approximately $100,000[6]
As stated above, the fact that few cases award general damages in excess of $100,000 to major children does not prevent the trial court from awarding damages greater than that amount. In the instant case, both daughters testified to the close relationships they shared with their father and to the relationships between Mr. Bourgeois and his grandchildren. We find that under the circumstances, the highest amount the jury could reasonably have awarded to the daughters was $125,000 each. The awards to the two daughters are reduced to $125,000.

C. Pain and Suffering Award

The evidence presented relative to pain and suffering was contradictory. The driver of the tractor, Mr. Glover, testified at trial that after he stopped the truck, he got under the vehicle with Mr. Bourgeois and Mr. Bourgeois was trying to speak to him. Mr. Roux testified that Mr. Bourgeois was unconscious within 30 seconds of the accident.
Based on Mr. Glover's testimony, it was certainly reasonable for the jury to conclude that Mr. Bourgeois was conscious for some short period of time after the impact. However, the evidence is also clear that he could not have remained conscious for more than a minute or so.
Pain and suffering awards for decedents who survive only a short time are generally in the range of $25,000.[7] Since the evidence that Mr. Bourgeois was conscious for any length of time after the accident is so limited, we hold that the highest award the jury could reasonably have awarded on this issue is $25,000. The pain and suffering award is reduced to $25,000, to be divided equally between the three plaintiffs.

V. Conclusion[8]
For the reasons discussed herein, the trial court's judgment is amended to reflect the reduced awards to the parties, as follows:

*1243
Mrs. Gloria Bourgeois:
 General damages........................... $685,000
 Burial expenses........................... 11,000
 1/3 of $25,000............................ 8,333
 ________
 TOTAL................................... $704,333
Cheryl B. Jackson:
 General damages........................... $125,000
 1/3 of $25,000............................ 8,333
 ________
 TOTAL................................... $133,333
Donna B. Hughes:
 General damages........................... $125,000
 1/3 of $25,000............................ 8,333
 ________
 TOTAL................................... $133,333

In all other respects, the judgment is affirmed.
AMENDED.
AFFIRMED AS AMENDED.
*1244 
NOTES
[1] Amendments to LSA-R.S. 23:1061 effective January 1, 1990 overruled the Berry test for determining statutory employer status. PRMMI argues in brief that those amendments should be applied retroactively to the instant case, citing two federal district court cases. Only one state court has addressed the retroactivity problem directly. See Legros v. Norcen Exploration, Inc., 583 So.2d 859 (La.App. 1st Cir.1991). In Legros, the court pretermitted the issue because the case involved a two-contract situation. Additionally, in Meche v. Washington Life Insurance Co., 578 So.2d 239 (La.App.3d Cir.1991), the concurring opinion states specifically that the amendments represent a "sweeping change" in the law, are clearly substantive, and therefore should not be applied retroactively. Id. at 239. We agree. The amendments completely change the analysis applied to one-contract statutory employer questions. Under the circumstances, they should not be applied retroactively.
[2] In support of this argument, PRMMI's counsel submitted his own affidavit to this court, in which he seeks to impeach the jury verdict based on an alleged telephone call from the jury foreperson. The affidavit has not been considered because of the jurisprudential rule which prohibits a juror from impeaching his own verdict. See Ryals v. Home Ins. Co., 410 So.2d 827 (La.App.3d Cir.), writs denied 414 So.2d 375 and 376 (La.1982).
[3] PRMMI's ancillary argument that the jury should also have been instructed that Cooper/T. Smith had a duty as employer to provide a safe workplace is not considered because no specific objection was made at trial.
[4] PRMMI also argues that the trial judge erred in failing to instruct the jury regarding Bourgeois' duty of care. However, since PRMMI failed to object to the absence of the instruction at trial, that issue is not preserved for appeal and will not be considered by this court.
[5] See, e.g. Comberrel v. Basford, 550 So.2d 1356 (La.App. 5th Cir.1989), writs denied 556 So.2d 1284 and 1285 (La.1990) ($300,000); Malmay v. Sentry Insurance Co., 550 So.2d 366, (La.App.3d Cir.1989) ($300,000); Keating v. Holston's Ambulance Service, Inc., 546 So.2d 919 (La.App.3d Cir.1989) ($325,000); Hellmers v. Department of Transportation and Development, 503 So.2d 174 (La.App. 4th Cir.1987, writs denied 505 So.2d 1141 and 1149 (La.1987) ($325,000).
[6] See, e.g. Brooks, 558 So.2d 1177 (La.App. 1st Cir.), writ denied 566 So.2d 982 (La.1990) ($100,000 to major child living away from home, $150,000 to major child living at home); Mergen v. Piper Aircraft Corp., 524 So.2d 1348 (La.App. 1st Cir.1989), writs denied 532 So.2d 154, 155 and 156 (La.1988) ($100,000); Thomas v. State Farm Insurance Co., 499 So.2d 562 (La. App. 2d Cir.), writs denied 501 So.2d 213 and 215 (La.1987) ($75,000).
[7] See, e.g. Moresi v. Nationwide Mutual Insurance Co., 488 So.2d 1311 (La.App.3d Cir.1986) ($25,000 for decedent who was conscious five to thirty minutes after the accident); Malmay, 550 So.2d 366 ($25,000 to decedent who gasped for breath approximately 30 to 40 minutes after accident).
[8] PRMMI's argument concerning the effect of the fault of the statutory employer's on the judgment is moot. Melton v. General Electric Co., Inc., 579 So.2d 448 (La.1991).