| ¡.DALEY, Judge.
Plaintiff Carolyn Arnold appeals a jury verdict against her in her suit for personal injuries against her landlord, Allen Du-frene. Ms. Arnold alleged that in October of 1994, she fell through a hole in the floor of the house that she rented from Mr. Dufrene, sustaining herniated discs and other injuries. The matter proceeded to a five day jury trial in January of 2001. The jury rendered a unanimous verdict that Mr. Dufrene was not negligent. Ms. Arnold filed a Motion for New Trial and Alternatively JNOV, which was denied. This appeal follows.
On appeal, Ms. Arnold alleges that the trial court erred in allowing the defense to call her treating physician, Dr. Sudderth, as a rebuttal witness, when his name failed to appear on the pre-trial witness list. She also argues that the jury verdict was manifestly erroneous under the law.
Arnold testified that the accident in question happened on October 10, 1994. Arnold lived at 7424 St. Rita Street with her companion, Mr. East, for about four Lyears, with their two small children. She testified that she and her landlord, defendant Mr. Dufrene, had an amicable relationship until she moved out.
Plaintiff described the house on St. Rita Street that they rented from Mr. Dufrene as an old shotgun house. She said that the carpet in the living room was wall to wall. The accident happened the day she was moving out of St. Rita Street. They had been evicted for nonpayment of the rent. Mr. East, his two brothers, and Joshua Cavanaugh were helping with the move. She testified that Cavanaugh was with her when she fell through the floor. He was unable to testify at trial because he had since been in an automobile accident that rendered him “a vegetable.”
Arnold testified that she was moving the entertainment center to unplug the TV. As she pulled on it, her left leg went through the floor. “The carpet was still there, but it was through the hole, with my left leg.” Plaintiff testified that she had abrasions on her left leg and shin. Joshua helped her up and to the sofa. She called her friend Edith Oddo, who took her to the emergency room at East Jefferson Hospital. She testified that the house was raised off the ground, and her leg pushed through to about one or two inches from touching the ground.
Arnold testified that her leg hurt from the abrasions, and her ankle swelled up. She didn’t report feeling lower back pain until later that evening while at the hospital. She denied having neck pain or pain *138 in the middle of her back. X-rays of her back were taken at the hospital. After she left the hospital, she went to Edith Oddo’s home in Jefferson (on St. George Street), and stated that she stayed there about a month. She returned to the West Bank to look for another apartment and moved in January.
Arnold described the pain in her left ankle that prevented her from walking on it. She testified that she had to have a splint on her leg. She had burning sensations in her back. She had to do a lot of therapy, heat treatment, and used a TENS unit. |4She said that she was unable to care for her children or cook meals for them. She was treated by Dr. Altman at this time.
Arnold testified that she started going to Dr. Batherson, a chiropractor, on referral from her lawyer. At some point, he referred her to Dr. Altman, with whom she treated for “a few months,” she couldn’t recall exactly how long. She testified that Dr. Altman recommended that she see an orthopedic surgeon. Arnold said that Dr. Altman had treated her when she slipped and fell at a motel years before. Dr. Altman referred her to Dr. Kueharchuk, an orthopedist, who told her she had something wrong with a disc in her lower back. She had a total of three MRIs performed at different points in this litigation. She also recalled seeing Dr. Olson, a neurologist, who concurred with Dr. Kueharchuk as far as problems with her disc.
Arnold testified that since the accident, she had gotten worse and could do fewer things. She couldn’t move furniture anymore, mop, or bend over to pick up things. She reported that her left leg had “gone numb” several times, and she had fallen down stairs. She couldn’t pick up her baby when she cried, because she weighed too much and it would strain her back. She had to go the emergency room for falling down the stairs. Arnold had lost weight. Her physical problems put a strain on her relationship with Mr. East and with her children. (At the time of trial, her children were nine and six years old.) Arnold said that she would have returned to work once her children were in school, but now has to depend on East for everything.
Plaintiff testified that she was in a car accident in 1981. Her car was rearended, and she hurt her neck. She received treatment for muscle spasms in her neck, but did not think she sued anyone for the accident.
| sBetween 1981 and 1985, plaintiff testified she hurt herself when she slipped and fell in a puddle of water in a motel room. She hurt her elbow, and thought she fractured her skull. She was treated for her injuries by Dr. LeClercq. Plaintiff testified that the next incident in which she ever received any physical trauma was on St. Rita Street, the accident that is the subject of this litigation. She denied having an auto accident in 1991.
Arnold reported hurting herself while waitressing at Shoney’s. She dropped a large iced tea dispenser on herself. She saw Dr. Olson as a result of this accident. She said this was prior to 1990. Dr. Olson treated her for migraine headaches.
Up until the St. Rita Street incident, plaintiff testified that she had no injuries to her lower back. When asked about accidents that defense counsel referred to in his opening statement, Arnold testified that she only remembered the motel incident and the teapot accident at Shoney’s. Plaintiff also remembered that she had cervical fusion surgery performed as a result of the car accident with her mother in 1981.
Plaintiff reported that after the St. Rita Street incident, she was hit by a garbage *139 truck in November of 1995, and went to East Jefferson Hospital. Her chest hit the steering wheel. She reported back pain right behind her chest.
On cross, Arnold stated that she had only two accidents prior to this one, and couldn’t recall any others. She denied remembering going to East Jefferson Hospital on January 18,1992, reporting low back pain from a fall two days prior. Upon looking at the records, Arnold said they said “two years prior” and related it to the slip and fall at the motel, which she now thought must have occurred in 1990 instead of 1991.
Arnold also remembered a car accident that occurred in Long Beach, Mississippi around 1982 or 1988 when she was about 18 years old. She said she filed |fisuit in that accident, but that it neither settled nor went to trial; she just moved back to Louisiana.
Arnold’s cross examination is profuse with her inability to recall previous deposition testimony, or previous accidents of any kind. Defense counsel repeatedly confronted her with inconsistent deposition testimony and medical records, and Arnold's overwhelming response to all questions was that she could not recall either the event or giving the inconsistent testimony.
In the deposition Arnold gave in connection with her accident with the garbage truck in 1995, she claimed that she sustained “lower back” injuries. She also said, in that deposition, that the only other time she had hurt her back was when she was working as a waitress at Shoney’s. She did not mention the St. Rita Street fall through the floor, because, as she explained, she did not know this lawsuit was pending.
On redirect, Arnold stated that she first learned she had a disc problem from Dr. Altman around January of 1995. She had an MRI performed.
Arnold testified that she did not receive any major injuries following the garbage truck accident. She said that the gross amount of the settlement was only $5,000.00, and after attorney’s fees, she received $250.00. She wasn’t sure what her settlement was from the case in Mississippi, but thinks it was around $4,000.00-5,000.00, out of which attorney’s fees were deducted.
IMPEACHMENT EVIDENCE
As rebuttal to Ms. Arnold’s direct testimony, the defense called Dr. Ward Sud-derth, Ms. Arnold’s family physician. In her direct testimony, Arnold denied that he treated her for back pain at any time. When called in rebuttal, he testified that hejjtreated her as recently as August of 2000, and said that he treated her as far back as the 1980s. His records indicate that he treated Ms. Arnold for lumbosacral (low back) pain from March of 1992 until December 27, 1994. Additionally, he referred her to Culicchia Neurological Clinic in 1995 when her lower back symptoms did not resolve.
Plaintiffs counsel objected to the defense counsel’s calling of Dr. Sudderth and the use of his medical records, arguing that Dr. Sudderth’s testimony and records were an unfair surprise to the plaintiff because she had not been properly notified that the defense would use them, as they were not listed in any pre-trial order. The defense argues that plaintiff stated, in her deposition in this case prior to trial, that she had been treated by Dr. Sudderth for back pain. This portion of the deposition, where Arnold made this admission, was read at trial during Arnold’s testimony on cross. The defense argues that Dr. Sud-derth’s records were the plaintiffs own treatment records and as such were equally available to both sides. Further, he *140 used them to impeach the plaintiff after she denied, in her direct testimony, that Dr. Sudderth had treated her at any time for back pain.
In her direct testimony, Arnold denied being treated by Dr. Sudderth for back pain at any point. The defendant was, therefore, allowed to introduce Dr. Sudderth’s testimony and records to impeach the plaintiff with regard to these statements. LSA-C.E. art. 607(D)(2) and C.E. art. 613, allow opposing counsel to attack the credibility of a witness concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of a witness’s testimony. See also Kampen v. Conway Southwest Exp., 95-45 (La.App. 5th Cir.4/12/95), 655 So.2d 380. Furthermore, the fact that these records were not listed in a pretrial order does not preclude their admission into evidence to impeach the plaintiff. Busby v. St. Paul Ins. Co., 95-2128 |s(La.App. 1st Cir.5/10/96), 673 So.2d 320, writ denied 96-1519 (La.9/20/96), 679 So.2d 443.
MANIFEST ERROR
Next, plaintiff argues on appeal that the jury was manifestly erroneous in their conclusion that Ms. Arnold’s slip and fall was not due to the negligence of the defendant, Mr. Dufrene.
The jury interrogatories show that the jury concluded that 1) Arnold did have an accident on October 10, 1994 at St. Rita Street, 2) at the time of the accident, defendant, Mr. Dufrene, was in control of the residence, but 3) the accident was NOT due to a defect in the premises that created an unreasonable risk of harm to the plaintiff.
In LeJeune v. Union Pacific R.R., 97-1843 (La.4/14/98), 712 So.2d 491, 494, the Supreme Court summarized our mandate in reviewing a jury verdict as follows:
The court of appeal may not disturb the conclusions reached by a jury regarding factual matters in the absence of “manifest error” or unless a particular finding of fact was “clearly wrong.” A two-part test is used in making this determination. The court of appeal may only reverse the trier of fact if: (l)it finds from the record that a reasonable factual basis does not exist for the finding of the jury, and (2) it further determines that the record establishes that the finding is clearly wrong or manifestly erroneous. The inquiry is not whether or not the jury was right or wrong, but whether its conclusions were reasonable ones. As long as the jury’s factual findings are reasonable, the court of appeal may not reverse even if it is convinced that it would have weighed the evidence differently (Citations omitted).
After reviewing the entire record, we find that the jury’s conclusions were reasonable.
Plaintiff called Allen Dufrene, the defendant, as a witness. He testified that Ms. Arnold rented a house from him on St. Rita Street. She was a tenant for three or |3four years. He recalled serving her with an eviction notice in 1994 because she wasn’t paying the rent. He said she wasn’t exactly a good tenant, because she didn’t keep up the yard as required in the lease. Many times he had to cut the grass himself. At the time of trial, Dufrene said she still owed him around $700.00. He said that many times when she came to pay him the rent, she didn’t pay him, but gave him a note saying that she was waiting for a settlement before she could pay him.
Mr. Dufrene said that he never went in the house while Arnold was renting from him, except for once when she asked him to replace a window air conditioner unit. Dufrene described the house as raised off *141 the ground about two and a half feet. As far as the condition of the floors, he noticed that the carpet was dirty and that trash was all over. The first time he went to the house after Arnold moved was the next morning. He did not immediately rent the house again, but started fixing it up. He ripped out the carpeting that very next day. He had a contractor, his ex-son-in-law, bring his crew over that next day to start remodeling. He wanted to concert it into two efficiency apartments. Part of the remodeling was to rip out the carpeting and replace it with tiles. To put in tiles, he had to put in a sub-floor.
Dufrene testified that he bought the house 20-25 years ago, but that it was well built. He moved it to St. Rita Street so he could build on the land where the house formerly sat. He said that he remodeled the house, but did not replace the floor, because the floor was wood. He did put carpet down on the wood floor. He said that he thought he last replaced the carpet about 1990, before Ms. Arnold moved in.
The plaintiff called Edith Oddo McClung as a witness. She had known the plaintiff since they were three years old, approximately 33 years, with some gaps. On that day of the incident she went to Arnold’s house. Arnold told her that she stepped through the floor as she was unplugging the TV. She didn’t actually see the hole in |inthe floor that day. The carpet was not pulled back when she was there. She described the carpet as about It inch thick and worn. She didn’t notice if it was tacked down or not on the side that it went through the floor.
McClung took Arnold’s children to her mother’s house, and then took Arnold to East Jefferson Hospital. Arnold told her that her leg and back hurt. She noticed that Arnold’s left ankle was swelling. Arnold stayed with her a week, was away at a Ms. Stone’s for a week, and then returned to her house and stayed until after the new year. Since the accident, McClung said she noticed that Arnold couldn’t bend and pick up her daughter, or get in the tub.
On cross, McClung reiterated that when she went to Arnold’s house that day in October, 1994, she found Arnold still sitting on the floor. In her deposition, however, she stated that she found Arnold sitting on the loveseat. She also clarified that she never saw a hole in the floor, and the carpet did not have a hole in it. She said that the carpet was down in the hole in the floor, but the carpet was never pulled back to expose the hole, though in her deposition she described Arnold showing her the hole. She did not examine it. She did not know how, if the carpet was tacked down, and it wasn’t torn, and there was no hole in it, how Ms. Arnold’s foot could go all the way through the floor. McClung stated at trial that it was Arnold’s left leg that was injured, but admitted that at her deposition she stated, more than once, that it was Arnold’s right leg that was injured.
Nicky Robo testified for the defendant. In 1994, he was employed remodeling houses. He worked with Ward McClen-don, who was married to Mr. Dufrene’s daughter at the time. He worked on remodeling St. Rita Street after the plaintiff moved out. He testified that they converted the house into apartments. He did not Insee any holes in the floor or carpet missing in any part of the house. He admitted they weren’t really looking for holes in the floor, though.
Robo testified that they replaced the existing floor with tile. He did not remember if any subflooring was put over the existing floor to make it level before the tile was placed down. He testified that he did not notice a hole in the floor of the living room. Robo also said that then *142 they went to pull up the carpet, it was all tacked down and they had to pull up all of it. He reported that the carpet was in a dirty, nasty condition, but did not have any holes in it.
On cross, Robo said that if they had found any holes in the floor, they would have had to repair the floor prior to putting the tile down, and he did not recall having to do that.
Ward McClendon, Mr. Dufrene’s former son-in-law, testified that his company remodeled the St. Rita Street house. He said that any time a tenant would move out of one of Mr. Dufrene’s houses, they would get it ready for the new tenant. He testified that he knew who Carolyn Arnold was, and knew that she was evicted from St. Rita Street. McClendon testified that the house was full of trash when he first arrived. He also reported that the air conditioning window unit, that had just been replaced about three or four months prior, was missing. While cleaning out all the trash in the house, he and Nicky found a receipt that had an address on it. The address was on St. George in Jefferson, so they went over there to see if they could find the air conditioner. While there, they observed Ms. Arnold carrying boxes out of her car, but didn’t see the air conditioning unit.
Mr. McClendon testified that it took several truck loads to remove the trash from inside St. Rita Street. He said he didn’t find any holes in the carpet, but did find a lot of stuff spilled in it. He said it was still tacked down when he ripped it out. | ^.Hardwood floor was under the carpet, and he said there were no holes in the hardwood floor anywhere in the house. The only place he noticed where the floor needed to be fixed was around the toilet, where water had spilled. McClendon testified that he put a subfloor under the new tile, because tile doesn’t adhere well to hardwood floor because of moisture barrier problems. The only place where floor might have been missing, he said, was where a wall was placed. He explained that in old houses, many times there was no hardwood floor underneath a wall, so when they removed a wall or two, they would have to put flooring under where the wall was. He said it took about two to three weeks to remodel the house. He did not remember doing any work on the property prior to October of 1994.
On cross, McClendon testified that most of his renovation work was commercial, and that he only did houses for Mr. Du-frene. He testified that he really didn’t have a relationship with him after his divorce from Dufrene’s daughter. He estimated that he helped the defendant with his properties for around five to eight years.
McClendon testified that he thought the apartment looked liked someone had tried to deliberately trash it, with food everywhere and cigarette butts. He said normally, the other apartments might need a little painting, but that this place was a total wreck.
Clearly the jury did not believe Ms. Arnold’s version of the accident. And after reviewing the evidence, we agree that the plaintiff failed to prove, by a preponderance of the evidence, that a hole existed in the wooden floor. Her description of the accident, that the carpet was tacked down, but still went through a hole in the floor so far down that her foot was only one to two inches from the ground in a house raised about two feet off the ground, was not credible. She described abrasions on 113her leg that were not recorded by the emergency room personnel or doctors she saw immediately after. Her own witness, Edith Oddo, testified inconsistently with her deposition and admitted at trial that she never actually saw the hole in the *143 floor. Arnold never notified Mr. Dufrene about the accident or the hole in the floor. Mr. Dufrene’s home remodelers, Mr. Robo and McClendon, both testified that they never found damage to the floor except around the toilet in the bathroom. The jury’s conclusion that Ms. Arnold may have slipped and fell, but that she did not prove a defect in the residence, is entirely reasonable, and will not be disturbed by this Court.
Ms. Arnold’s testimony regarding her history of back injuries and medical treatment was repeatedly shown to be inconsistent and she was impeached on numerous occasions, not merely by Dr. Sudderth’s records and testimony. The record contains the testimony of several of her treating physicians, including Dr. John Olson, Dr. Stewart Altman, and Dr. Andrew Ku-charchuk, who showed that she often gave them incomplete medical histories, forgetting to tell them of previous back injuries and accidents. Ms. Arnold’s statement that she did not suffer any subsequent back injuries was also impeached with the introduction of numerous emergency room records from East Jefferson Hospital, through 1999, where plaintiff complained of injuries in her home to her back and requested refills of her pain medication. The jury had an arsenal of evidence that cast serious doubt about the plaintiffs credibility.
Accordingly, the jury’s verdict and the judgment of the trial court is affirmed. Appellant to pay all costs of appeal.
AFFIRMED.